WHITESIDE ESTATES, INC., Plaintiff v. HIGHLANDS COVE, L.L.C., Defendant

No. COA00-1378, COA00-1005

(Filed 16 October 2001)

## 1. Nuisance— corporate—interference with use and enjoyment of land—sufficiency of evidence

The trial court did not err in an action to recover the repair and restoration costs for plaintiff's creek and lake property caused by the sedimentation emanating from defendant's property by denying defendant's motion for a directed verdict, its motion for judgment notwithstanding the verdict, or alternatively a new trial based on alleged insufficient evidence for a corporate nuisance claim, because: (1) the record supports the jury's finding that substantial evidence exists that defendant intentionally caused and allowed colloidal material to flow into plaintiff's creek and lake to such a degree as to substantially and unreasonably interfere with plaintiff's use and enjoyment of its land; and (2) the evidence was sufficient for the jury to conclude that the injury to plaintiff's property was substantial and significant to recover damages.

## 2. Trespass— land disturbing activities—sufficiency of evidence

The trial court did not err in an action to recover the repair and restoration costs for plaintiff's creek and lake property caused by the sedimentation emanating from defendant's property by denying defendant's motion for a directed verdict, its motion for judgment notwithstanding the verdict, or alternatively a new trial based on alleged insufficient evidence for a trespass claim, because there is sufficient evidence for the jury to conclude that defendant's land disturbing activities caused sediment to unlawfully enter upon plaintiff's property causing damage and injury.

## 3. Environmental Law— Sedimentation Pollution Control Act—sufficiency of evidence

The trial court did not err in an action to recover the repair and restoration costs for plaintiff's creek and lake property caused by the sedimentation emanating from defendant's property by denying defendant's motion for a directed verdict, its motion for judgment notwithstanding the verdict, or alternatively a new trial based on alleged insufficient evidence of

defendant's violation of the Sedimentation Pollution Control Act under N.C.G.S. § 113A-66(a)(4), because even though no statutory notices of violation were issued and the inspector testified that defendant had done as good a job as it could do, substantial evidence proves that sediment left defendant's site and caused injury to plaintiff.

**4. Damages— reasonable cost to repair and restore property—prenuisance condition**

The issue of damages for the repairing and restoration of plaintiff's creek and lake property caused by the sedimentation emanating from defendant's property is remanded to the trial court because: (1) plaintiff's evidence failed to establish, with as much certainty as the nature of the circumstances permit, the reasonable estimate of the cost to repair and restore plaintiff's lake and creek to its prenuisance condition; and (2) no evidence at trial established with reasonable certainty plaintiff's costs to control, on plaintiff's property, the source of sediment coming off defendant's property.

**5. Damages— requested jury instruction—condition of lake**

The trial court did not err in an action to recover the repair and restoration costs for plaintiff's creek and lake property caused by the sedimentation emanating from defendant's property by refusing to give defendant's requested jury instruction concerning evidence from plaintiff corporation's shareholders regarding the condition of the lake as evidence of damage sustained by defendant, because the testimony about the condition of the lake goes directly to the question of injury sustained to the property.

**6. Damages— requested jury instructions—preventive measures—aesthetic injury—increased sedimentation**

The trial court did not err in an action to recover the repair and restoration costs for plaintiff's creek and lake property caused by the sedimentation emanating from defendant's property by refusing to give defendant's requested jury instructions that preventive measures may not be considered as any measure of damage suffered by plaintiff, there has been no evidence of a valuation or amount of damage caused by the aesthetic injury, and the sediment being deposited on plaintiff's property is no more than the amount in the past, because: (1) the trial court instructed the jury that any evidence offered by plaintiff with

WHITESIDE ESTATES, INC. v. HIGHLANDS COVE, L.L.C.

[146 N.C. App. 449 (2001)]

respect to adequately detaining the source of sediment leaving defendant's property is not necessarily evidence of preventive measures; (2) there was sufficient evidence of defendant's injury to sustain an award for damages; and (3) the amount of sediment affecting plaintiff's property goes to the issue of reasonableness of the interference or invasion and the significance of the injury.

**7. Evidence-scientific— turbidity samples from lake and creek water**

The trial court did not abuse its discretion in an action to recover the repair and restoration costs for plaintiff's creek and lake property caused by the sedimentation emanating from defendant's property by allowing the introduction of turbidity samples from the lake and creek water into evidence, because: (1) the trial court found plaintiff's expert testimony about turbidity sampling was reliable under N.C.G.S. § 8C-1, Rules 702 and 703, defendant offered no evidence of turbidity readings, and defendant failed to offer evidence that the measurements were inaccurate; and (2) five jars of water with different turbidity levels were introduced for illustrative purposes only to assist the jury in determining different levels of turbidity.

**8. Costs— attorney fees—apportionment—same nucleus of operative facts**

The trial court was not required to apportion attorney fees in plaintiff's actions under the Sedimentation Pollution Control Act, common law nuisance, and trespass even though attorney fees are generally not recoverable for plaintiff's common law nuisance and trespass claims, because: (1) the allowance of attorney fees under the Sedimentation Act is expressly in the discretion of the trial court under N.C.G.S. § 113A-66(c); and (2) all of plaintiff's claims arise from the same nucleus of operative facts and each claim was inextricably interwoven with the other claims.

**9. Costs— attorney fees—reasonableness**

The trial court did not abuse its discretion by awarding attorney fees in plaintiff's actions under the Sedimentation Pollution Control Act, common law nuisance, and trespass, because: (1) the trial court made the appropriate findings of fact as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney; (2) plaintiff's counsel amended its motion to reduce its invoice for legal fees

for unrelated matters; and (3) defendant has not argued that the hourly fee or time expended was unreasonable.

**10. Costs— expert witness fees—Sedimentation Pollution Control Act—failure to subpoena witness**

The trial court erred by awarding expert witness fees to plaintiff under N.C.G.S. § 7A-314 based on plaintiff's claim under the Sedimentation Pollution Control Act, because the statute provides the requirement that all witnesses must be subpoenaed before they are entitled to compensation, and there is no evidence in the record that plaintiff's expert witnesses appeared under subpoena.

Appeal by defendant from judgment entered 6 March 2000 and order entered 30 May 2000 by Judge J. Marlene Hyatt in Jackson County Superior Court. Both appeals heard in the Court of Appeals 15 August 2001.

*Roberts & Stevens, P.A., by William Clarke, for plaintiff-appellee.*

*Creighton W. Sossomon, and Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Elizabeth B. Partlow and Keith E. Coltrain, for defendant-appellant.*

TYSON, Judge.

Highlands Cove, L.L.C. ("defendant") appeals from judgment entered upon the verdict of the jury, the trial court's order denying motion for judgment notwithstanding the verdict and/or new trial, and the trial court's order awarding attorney and expert witness fees. We affirm the judgment and remand for a new trial on damages only, and we affirm the trial court's order awarding fees in part and reverse in part.

At the outset we note that the appeal from the judgment and the trial court's order denying defendant's motion for judgment notwithstanding the verdict and/or new trial, COA00-1378, was filed separate from the appeal of the order awarding attorney and expert witness fees, COA00-1005. These inter-related appeals were consolidated for hearing *ex mero motu. See* N.C.R. App. P. 40. Both appeals are decided within this opinion.

## I. Facts

Defendant purchased approximately 400 acres of real property that adjoins and is upstream from property owned by Whiteside Estates, Inc. ("plaintiff") in March of 1998. Defendant acquired its property to construct residential units and a golf course.

Plaintiff, a corporation whose sole shareholders are O.E. Young, Jr. ("Young"), his wife Mary Lou Young, and their five children, owns approximately 265 acres. Plaintiff's property is directly downstream from defendant's development. In 1957, Young constructed a dam on Grassy Camp Creek ("creek") which ran through the property, forming an eighteen-acre lake known as Young Lake ("lake"). The creek traverses both defendant's and plaintiff's property.

The Land Quality Section of the North Carolina Department of Environment and Natural Resources ("DENR") issued defendant a Sedimentation and Erosion Control permit and approved their plan to develop its property on or about 29 July 1998. Defendant began construction shortly thereafter.

The evidence tended to show that significant rainfall caused sediment from defendant's land-disturbing activities to flow into the creek in October 1998. Plaintiff's lake and creek collected colloidal material after that first rainfall and every subsequent rainfall, impacting the lake water's quality, damaging the creek, and invading plaintiff's use and enjoyment thereof.

The North Carolina Division of Land Resources ("NCDLR") inspected the project almost weekly during defendant's construction, compiling numerous reports. Although no statutory "Notices of Violation" were issued pursuant to G.S. § 113A-61.1, several reports indicated that: (1) defendant's activities utilized "insufficient measures to retain sediment on site," (2) defendant failed "to take reasonable measures," on site during construction, and (3) defendant's site was not in compliance with the Sedimentation Pollution Control Act ("Sedimentation Act").

Plaintiff sought and obtained a temporary restraining order. At the return hearing on the order, plaintiff sought to enjoin defendant's project. The trial court denied the injunction. Plaintiff then filed a complaint seeking damages for nuisance, trespass, and violation of the Sedimentation Act on 31 March 1999. Defendant answered denying all allegations and counterclaimed for abuse of process. At the close of plaintiff's evidence and again at the close of all the evidence,

WHITESIDE ESTATES, INC. v. HIGHLANDS COVE, L.L.C.

[146 N.C. App. 449 (2001)]

defendant moved for a directed verdict. Both motions were denied. The jury returned a verdict in plaintiff's favor of $500,000.00 on 6 March 2000. The jury's verdict did not segregate the damages between plaintiff's three claims. The trial court entered judgment thereon. Defendant moved for judgment notwithstanding the verdict, or in the alternative, a new trial. The trial court denied the motion on 30 May 2000. Defendant appeals.

Plaintiff's counsel subsequently moved for attorney fees in the amount of $67,246.50, expenses in the amount of $3,500.16, and expert witness fees in the amount of $37,353.13 pursuant to G.S. § 113A-66(c). Copies of counsel's invoices for legal services, an affidavit of William Clarke, plaintiff's counsel, copies of invoices for plaintiff's three expert witnesses, and an affidavit of J. David Young, managing agent for plaintiff, were filed in support of the motion.

Plaintiff amended its motion for attorney and expert witness fees by reducing the amount requested for attorney fees by $7,700.00, for work involving the same parties but for another matter, on 8 May 2000. The amendment included a second affidavit of William Clarke setting forth the hourly rates for the legal services rendered, the fact that the hourly rates charged were commensurate with the type of work involved, and are within the range of such fees and charges customarily charged in the community.

On 30 May 2000, the trial court entered an order awarding plaintiff attorney fees in the amount of $58,546.50, less than plaintiff's requested amount, and expert witness fees in the amount of $37,353.13. Defendant appeals.

## II. Issues

Defendant assigns the following errors on appeal: (1) the trial court erred in denying defendant's motions for a directed verdict and its motion for judgment notwithstanding the verdict or, alternatively, a new trial because the evidence was insufficient to sustain a judgment on plaintiff's three claims for relief; (2) the trial court erred when it rejected defendant's proposed jury instructions; (3) the jury verdict was excessive and reflected a disregard for the jury instructions and was influenced by passion; (4) the trial court erred by admitting into evidence the testimony of two plaintiff witnesses and certain demonstrative evidence; and (5) the trial court erred in granting plaintiff's attorney and expert witness fees.

WHITESIDE ESTATES, INC. v. HIGHLANDS COVE, L.L.C.

[146 N.C. App. 449 (2001)]

### III. Sufficiency of the Evidence

#### A. Nuisance

**[1]** Defendant argues that plaintiff presented no evidence that it interfered with corporate plaintiff's use and enjoyment of its property.

"To recover in nuisance, plaintiffs must show an unreasonable interference with the use and enjoyment of their property." *Jordan v. Foust Oil Co., Inc.*, 116 N.C. App. 155, 167, 447 S.E.2d 491, 498 (1994) (citation omitted). The interference or invasion which subjects one to liability may be intentional or unintentional. *Morgan v. High Penn Oil Co.*, 238 N.C. 185, 193, 77 S.E.2d 682, 689 (1953).

Unintentional nuisance occurs when defendant's conduct is negligent, reckless, or ultrahazardous. *Id.* Intentional nuisance, on the other hand, focuses on the unreasonableness of the interference. *Watts v. Pama Mfg. Co.*, 256 N.C. 611, 617, 124 S.E.2d 809, 813 (1962); *see also* David A. Logan & Wayne A. Logan, *North Carolina Torts*, § 28.10, at 605 n.13 (1996) (A private nuisance may be created or maintained without negligence). "A person who intentionally creates or maintains a private nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised by him to avoid such injury." *Morgan*, 238 N.C. at 194, 77 S.E.2d at 689 (citations omitted); *Parker v. Barefoot*, 130 N.C. App. 18, 502 S.E.2d 42 (1998), *rev. on other grounds*, 351 N.C. 40, 519 S.E.2d 315 (1999) (A defendant's use of state-of-the-art technology or the fact that he was not negligent in the design or construction of his facility are not defenses to a nuisance claim).

An intentional invasion or interference occurs when a person acts with the purpose to invade another's interest in the use and enjoyment of their land, or knows that it will result, or will substantially result. *Morgan*, 238 N.C. at 194, 77 S.E.2d at 689 (citations omitted).

An intentional invasion or interference, however, is not always unreasonable. *Watts*, 256 N.C. at 618, 124 S.E.2d at 814. In *Watts*, our Supreme Court listed factors to be considered in assessing whether an intentional interference is unreasonable:

the surroundings and conditions under which defendant's conduct is maintained, the character of the neighborhood, the nature, utility and social value of defendant's operation, the nature, util-

ity and social value of plaintiffs' use and enjoyment which have been invaded, the suitability of the locality for defendant's operation, the suitability of the locality for the use plaintiffs make of their property, the extent, nature and frequency of the harm to plaintiffs' interest, priority of occupation as between the parties, and other considerations arising upon the evidence. No single factor is decisive; all the circumstances in the particular case must be considered.

*Id.* (citations omitted); *See also Pendergrast v. Aiken* 293 N.C. 201, 217, 236 S.E.2d 787, 797 (1977).

To be actionable, "[t]he interference must be substantial and unreasonable. *Substantial* simply means a significant harm to the plaintiff and *unreasonably* means that it would not be reasonable to permit the defendant to cause such an amount of harm intentionally without compensating for it." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 88, at 626 (5th ed. 1984) (emphasis supplied).

Once plaintiff establishes that the invasion or intrusion is unreasonable, plaintiff must prove the invasion caused substantial injury to its property interest. *Watts*, 256 N.C. at 619, 124 S.E.2d at 814; *Rudd v. Electrolux Corp.*, 982 F.Supp. 355 (M.D.N.C. 1997) (need to install wells to monitor water quality presented jury question whether defendant's invasion was substantial). "An upper riparian landowner's unreasonable use of water quantity or diminution of its quality permits a lower riparian owner to maintain a civil action in nuisance or trespass to land." *Biddix v. Henredon Furniture Industries, Inc.*, 76 N.C. App. 30, 35, 331 S.E.2d 717, 721 (1985) (citations omitted). "The sedimentation of streams, lakes and other waters of this State constitutes a major pollution problem." N.C. Gen. Stat. § 113A-51 (1975). " 'The ownership or rightful possession of land necessarily involves the right not only to the unimpaired condition of the property itself, but also to some reasonable comfort and convenience in its occupation.' " *Kaplan v. Prolife Action League of Greensboro*, 111 N.C. App. 1, 21, 431 S.E.2d 828, 838 (1993) (quoting Prosser, *supra*, § 87, at 619 (footnote omitted)).

Here, it is uncontroverted that the plaintiff is the owner of the property, and that defendant engaged in land-disturbing activity. Plaintiff presented evidence that defendant began clearing its property in July of 1998. The evidence tended to show that after significant rainfall, sediment from those activities flowed into plaintiff's creek

and lake, despite defendant's State-approved erosion control measures. Plaintiff entered into evidence numerous photographs of the lake's condition before and after defendant's land-disturbing activity. Before defendant's development began the lake was crystal clear. After defendant's development commenced the lake had the appearance of coffee with cream. There is substantial evidence that defendant's activities were the major, if not the sole, source of the runoff.

Plaintiff offered expert testimony that described the decreased level of water quality in the lake as well as increased levels of erosion and sediment in its creek. Water sampling test results tended to show that turbidity levels (a measurement of the amount of light bouncing off suspended particles in water) dramatically increased. Dr. Ken Wagner ("Wagner") also testified that defendant's sedimentation and erosion control plan was inadequate, "causing high turbidity" in plaintiff's creek and lake. He also described the harm caused to aquatic life in the lake.

Inspector Mike Goodson ("Goodson") inspected defendant's project for compliance with its plan, and testified as defendant's witness that sedimentation had left the site and entered into the creek. Goodson also testified that although he did inspect defendant's property, he never "walk[ed] to the property boundary" to see if the sediment that left defendant's property damaged plaintiff's property. He further testified that he never sampled the water quality in plaintiff's lake.

Plaintiff's shareholders testified that for forty years the lake and creek had been used for fishing, swimming, boating, and other recreational uses. After defendant's land-disturbing activities started, the water became polluted with sediment and the lake was unfit for such activities. Defendant contends that corporate plaintiff presented no evidence of harm to the corporation: "Plaintiff offered no testimony of impairment of business relationships, lost rentals, lost sales, or lost revenues of any kind . . . Plaintiff put forth no evidence that the fair market value of its asset had depreciated because of the alleged injuries." Defendant asserts that the evidence failed to support a corporate nuisance claim. We disagree.

Plaintiff's corporate charter lists as one of its purposes and objects to "buy, sell, exchange . . . water rights and privileges; to build, construct, operate, maintain, . . . reservoirs to impound water, . . . ." Sedimentation deposits and collodial suspended material

substantially damage water quality and impact the above mentioned corporate use.

A plaintiff need not establish loss of fair market value in the property or lost rentals, sales, or revenues to show sufficient injury to support damages in nuisance. These items are one method of measuring damages after substantial injury is proven, not a method for determining injury. Plaintiff must show that the injury was substantial or significant. *Watts*, 256 N.C. at 619, 124 S.E.2d at 814. Here, plaintiff's shareholders testified that the injury to its lake and creek was substantial and significant.

The record supports the jury's finding that substantial evidence exists that defendant intentionally caused and allowed colloidal material to flow into plaintiff's creek and lake to such a degree as to substantially and unreasonably interfere with plaintiff's use and enjoyment of its land. The evidence was also sufficient for the jury to conclude that the injury to plaintiff's property was substantial and significant to recover damages.

## B. Trespass

[2] Defendant argues that the evidence failed to support a claim for trespass because no suspended solids were deposited on the land, "but rather continued downstream as water in the lake was released." Defendant asserts that since there was no evidence that sediment settled in the lake, and that "there is no property right in any particular particle of water or in all of them put together" there can be no trespass. *Smith v. Town of Morganton*, 187 N.C. 801, 802, 123 S.E.2d 88, 89 (1924). Defendant also contends that if there is sediment on plaintiff's property there is no evidence that defendant caused it.

A fuller contextual quotation from *Smith v. Town of Morganton* reveals defendant's error with respect to property rights in water.

the right to have a natural water course continue its physical existence upon one's property is as much property as is the right to have the hills and forests remain in place, and while there is no property right in any particular particle of water or in all of them put together, a riparian proprietor has the right of their flow past his lands for ordinary domestic, manufacturing, and other lawful purposes, without injurious or prejudicial interference by an upper proprietor. (citation omitted) . . . [A] riparian proprietor is entitled to the natural flow of a stream running through or along his land in its accustomed channel, undiminished in quantity and

unimpaired in quality, except as may be occasioned by the reasonable use of the water by other like proprietors. (citations omitted).

*Id.* at 803, 123 S.E.2d at 89.

Defendant's argument that since there was no evidence that any suspended material in the lake settled bars recovery in trespass is misplaced. First it fails to address the evidence that there was sediment in and about plaintiff's creek caused by defendant's land-disturbing activity. Second, Wagner testified that "there is a fine coating of sediment on the bottom [of the lake]. It's not much . . . but that fine stuff could get resuspended by wind . . . and cause high turbidity."

"The elements of a trespass claim are that plaintiff was in possession of the land at the time of the alleged trespass; that defendant made an unauthorized, and therefore unlawful, entry on the land; and that plaintiff was damaged by the alleged invasion of his rights of possession." *Foust Oil Co., Inc.*, 116 N.C. App. at 166, 447 S.E.2d at 498 (citing *Matthews v. Forrest*, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952)).

Viewing the evidence in the light most favorable to the plaintiff, we hold that there is sufficient evidence for the jury to conclude that defendant's land disturbing activities caused sediment to unlawfully enter upon plaintiff's property causing damage and injury.

### C. Sedimentation Pollution Control Act

[3] Although we find that the nuisance and trespass claims are sufficient to show damages, we address defendant's assignment of error regarding the statutory claim. The Sedimentation Act contains an attorney fee and expense shifting clause. N.C. Gen. Stat. § 113A-66(a)(4) (1999). The trial court awarded plaintiff attorney and expert witness fees following the jury's finding that defendant violated the Sedimentation Act.

Defendant argues that it did not violate the Sedimentation Act nor did it cause damage or injury to plaintiff's property. We disagree.

The act expressly authorizes a private action for damages:

"[a]ny person injured by a violation of [the Sedimentation Act] . . . or by the initiation or continuation of a land-disturbing activity for which an erosion control plan is required other than

in accordance with the terms, conditions, and provisions of an approved plan, may bring a civil action [seeking damages] against the person alleged to be in violation . . . ."

N.C. Gen. Stat. § 113A-66(a) (1999).

Defendant correctly argues that "[t]o be recoverable, the damages sought by the plaintiffs must be 'caused by the violation.' " *Huberth v. Holly*, 120 N.C. App. 348, 353, 462 S.E.2d 239, 243 (1995). This Court in *Holly* found no violation of the Sedimentation Act because there was no evidence that the violation *caused* the loss of trees or groundcover. *Id.* (emphasis supplied).

Here, we find there was sufficient evidence for the jury to conclude that defendant's violation of the Sedimentation Act caused sediment to damage plaintiff's creek and lake. Although no statutory "Notices of Violation" were issued and Inspector Goodson testified that defendant had "done as good a job as they can do," substantial evidence proves that sediment left defendant's site and caused injury to plaintiff.

Goodson testified that "there were times when I felt like they weren't meeting the plan and steps were taken to correct that." Goodson stated that he would "scream and yell" at the contractors to correct the problems. Goodson also testified that during at least one inspection a "basin had filled up and some sediment had gone . . . into grassy camp [creek]." He further testified that he never walked to the plaintiff's property to see if sediment that migrated into the creek on defendant's property traveled through the creek or lake onto plaintiff's property.

An inspection report dated 6 October 1998 stated that there were "[i]nsufficient measures to retain sediment on site, G.S. 113A-57(3)." This report also cited defendant's "[f]ailure to take all reasonable measures, 15A NCAC 4B.0005" and that the site was not in compliance with the Sedimentation Act and the rules. Goodson noted defendant's need to "install measures to retain sediment within property boundaries. Install silt fence per approved plan." The report stated that "access bridges across 13 & 14 fairways are not adequately protected and stabilized, silt fence . . . not properly toed in, sediment is leaving site at end of #15 fairway." The report concluded that these items must be addressed immediately.

A report on 7 December 1998 noted that the site is not currently in compliance with the Sedimentation Act and the rules. The devel-

opment had failed "to follow approved plan, G.S. 113A-61.1." The report required defendant to "install measures per approved plan" as corrective actions needed. Additional comments noted that "[s]edi-ment trap #SP18FR2 has not been installed per plan . . . Areas in PH.I have not been stabilized per construction schedules discussed on 12/4/98."

Another report dated 16 December 1998 also concluded that the development was not in compliance with the Sedimentation Act and rules. The report found that (1) the site had an "inadequate buffer zone, G.S 113A-57(1);" (2) it failed "to maintain erosion control mea-sures, 15A NCAC 4B.0013;" (3) there were "insufficient measures to retain sediment on site, G.S. 113A-57;" (3) and that sedimentation damage has occurred since the last inspection. The report required the defendant to "re-install buffer-zone at bridge site on #10." The report noted that the "silt fence . . . is in disrepair at #10 bridge site. Need to seed and mulch around this area to reestablish buffer."

Viewed in the light most favorable to the plaintiff, we hold that there was sufficient evidence to find defendant violated the Sedimentation Act and damaged plaintiff.

## IV. Verdict Amount

**[4]** Defendant argues that the $500,000.00 jury verdict was excessive, reflected a disregard for the trial court's jury instructions, and based on passion or prejudice. Defendant contends that evidence of the cost of repair was speculative, conjectural, and lacked reasonable cer-tainty. Defendant requests that we modify the judgment to $20,000.00, "the maximum amount that could properly have been awarded." Alternatively, defendant requests that we reverse judgment and order a new trial.

The trial court's jury instruction included the following: "In this case you will determine actual damages by determining the reason-able costs to the plaintiff of expenses shown by the evidence neces-sary for repairing or restoring the plaintiff's property. You may not speculate in regard to future damages, if any."

Once liability is established for an abatable or temporary nui-sance, the remedy includes money damages. *Phillips v. Chesson,* 231 N.C. 566, 569-70, 58 S.E.2d 343, 346 (1950). For an abatable nuisance, plaintiff may only recover damages up to the time of the complaint or trial. *Id.; see also Webb v. Virginia-Carolina Chemical Co.*, 170 N.C. 662, 666, 87 S.E. 633, 635 (1916). Future damages must be recovered

in successive actions. *Id.* "The continued migration of contaminants remains a nuisance and when each contaminant crosses onto an adjoining property, there is a new trespass and injury." *Electrolux Corp.*, 982 F.Supp at 369. "The kinds of damages recoverable include: diminished rental value; reasonable costs of replacement or repair; restoration of the property to its pre-nuisance condition; and other added damages for incidental losses." *Id.* at 372 (citing *Phillips*, 231 N.C. at 571-72, 58 S.E.2d at 348). "Some commentators indicate that incidental losses might include, under appropriate circumstances, recovery of plaintiff's reasonable costs incurred to prevent future injury or abate the nuisance or its harmful effects." *Id.* at n.12 (citing Prosser, *supra*, § 89 at 640). "Where the nuisance is the kind that does more or less tangible harm to the premises, the cost of repair or restoration may be the appropriate measure of damages, . . . ." Prosser, *supra*, § 89, at 639 (quoting Dobbs, *Remedies*, 1973, 332-35).

Plaintiff is entitled to compensation to the extent that he has established damages " 'with as much certainty as the nature of the tort and the circumstances permit.' " *Largent v. Acuff*, 69 N.C. App. 439, 444, 317 S.E.2d 111, 114 (1984) (citation omitted). Proof of damages requires " 'that the plaintiff adduce some relevant datum from which a 'just and reasonable' estimate of the amount might be drawn . . . [This] does not require proof of damages with mathematical precision.' " *Id.*

At bar, plaintiff offered expert testimony of the cost to repair and restore its creek and lake. All of the approaches assumed that the source, defendant's activities, would be adequately controlled. If not controlled, repairing and restoring plaintiff's property would be ineffective.

Wagner testified that cleaning the lake would cost $20,000.00. He explained that "of course, you only want to do that once you've controlled the source."

Controlling the source involved repairing and restoring the creek and controlling the amount of sedimentation emanating from defendant's property. Wagner discussed two procedures to restore the creek. One approach would cost between $75,000.00 and $150,000.00. The other approach would "be, roughly, double the cost of the other approach." The evidence adduced to repair and restore the lake and creek on plaintiff's property ranged from $95,000.00 to $320,000.00. We conclude that plaintiff's evidence has failed to establish, with as

much certainty as the nature of the circumstances permit, the reasonable estimate of the cost to repair and restore plaintiff's lake and creek to its pre-nuisance condition.

Wagner testified concerning the cost of adequate detention to control the erosion coming off defendant's property. He testified that adequate detention would cost between $1,400,000.00 and $4,000,000.00. Defendant argues that Wagner's testimony about controlling and detaining the source on defendant's property was evidence of defendant's preventing injuries or "at most evidence of costs defendant should have incurred" and "irrelevant to the issue of how much plaintiff was entitled to recover" in damages. We agree that Wagner's testimony about the cost of controlling the sedimentation coming off defendant's property was evidence of defendant's costs on his property. We note that the evidence about controlling the erosion coming off defendant's property, however, was not irrelevant to the determination of plaintiff's damages. Plaintiff was entitled to the cost to control that source only if necessary to repair and restore the creek and lake. No evidence at trial established with reasonable certainty plaintiff's costs to control, on plaintiff's property, the source of sediment coming off defendant's property.

Wagner testified that defendant's sedimentation and erosion control plan was inadequate. He also testified that if nothing were done to prevent and control sediment coming down the creek from defendant's property, the repairs of the lake and creek on plaintiff's property would be ineffective. The jury could have reasonably concluded that in order to restore and repair plaintiff's lake and creek, plaintiff would have to take adequate and reasonable measures to control the source on its property.

The only testimony regarding the cost to control the source of sedimentation was testimony by Wagner. He testified that "they [defendant] need a lot more detention and they need some sort of auxiliary system to remove the colloidal material that are causing high turbidity." He estimated defendant's cost between 1,400,000.00 and 4,000,000.00.

We hold that there is insufficient evidence in the record of the reasonable estimate of costs to repair and restore the creek and lake to its pre-nuisance condition with as much certainty as the circumstances require. The record contains no evidence regarding the plaintiff's cost to control the source on its property. We remand for a new trial on damages only. N.C. Gen. Stat. § 1-297 (1969).

WHITESIDE ESTATES, INC. v. HIGHLANDS COVE, L.L.C.

[146 N.C. App. 449 (2001)]

## V. Jury Instructions

Defendant contends the trial court erred by refusing to give defendant's four additionally requested jury instructions. We disagree.

When a party's requested jury instruction is correct and supported by the evidence, the trial court is required to give the instruction. The instructions need not be given exactly as submitted, but they must be given in substance. *State v. Davis*, 291 N.C. 1, 229 S.E.2d 285 (1976); *Haymore v. Thew Shovel Co.*, 116 N.C. App. 40, 49, 446 S.E.2d 865, 871 1994 (citation omitted). The trial court has discretion to refuse instructions based on erroneous statements of the law. *State v. Agnew*, 294 N.C. 382, 395-96, 241 S.E.2d 684, 692 (citations omitted), *cert denied*, 439 U.S. 830, 58 L. Ed. 2d 124 (1978).

### A. Corporate Plaintiff

[5] Defendant asked the trial court to instruct the jury as follows:

> there has also been evidence offered by the individuals O.E. Young, David Young and Mary Lou Young tending to show that they have lost the use of the lake for swimming, fishing, frogging, boating and the general pleasure of enjoying the view of the lake and its use by themselves and their friends, relatives and guests. I charge you in this regard that the corporation may not recover for any personal loss by these individuals, or any other individuals. Their testimony should be considered by you only in connection with the history of the lake or its general fitness for use for these purposes, if at all, unless they were, in so using the lake, doing so in pursuit of some corporate purpose.

The trial court did not give this instruction. Defendant argues that any evidence from plaintiff's shareholders regarding the condition of the lake was not evidence of damage sustained by the plaintiff. This argument is without merit. Plaintiff's shareholder's testimony about the condition of the lake goes directly to the question of injury sustained to the property. Any relevant evidence establishing injury to the plaintiff's property was appropriate.

### B. Preventive Measures by Defendant

[6] Defendant requested the trial court charge the jury that "preventive measures may not be considered by you as any measure of damage suffered by plaintiff." The trial court's instruction included the

following: "In this case you will determine actual damages by determining the reasonable costs to the plaintiff of expenses shown by the evidence necessary for repairing or restoring the plaintiff's property. You may not speculate in regard to future damages, if any." Any evidence offered by the plaintiff with respect to adequately detaining the source of sediment leaving defendant's property is not necessarily evidence of preventive measures. Plaintiff would be entitled to costs for controlling the source of sediment on defendant's property when it impacts plaintiff's property if necessary to repair and restore the creek and lake. If defendant does not adequately detain sediment from leaving its property or prevent injury to plaintiff's property, plaintiff can take reasonable measures to protect its property in order to repair and restore its lake and creek.

## C. Aesthetic Damages

Defendant requested that the trial court instruct the jury in part that "I charge you that there has been no evidence of a valuation or amount of damage caused by this [aesthetic] injury." Whether evidence has been presented or not is a question for the jury. This requested instruction was erroneous. There was sufficient evidence of plaintiff's injury to sustain an award for damages.

## D. Increase Sedimentation Charge

Defendant requested the additional instruction that "sediment being deposited now [on plaintiff's property] is no more than, or not measurable more than in the past." Both sides presented their evidence. It was for the jury, as fact finder, to determine from the evidence the volume of sediment that flowed onto plaintiff's property. The amount of sediment affecting plaintiff's property goes to the issue of reasonableness of the interference or invasion and the significance of the injury.

The trial court's instructions to the jury sufficiently defined the law and were supported by the evidence with respect to every substantive element of the case. Defendant's assignments of error are overruled.

## VI. Testimony and Demonstrative Evidence

[7] Defendant contends that the introduction of turbidity samples from the lake and creek water into evidence was error. Defendant claims that the instrument used by plaintiff's expert witness John Boaze ("John") was not properly calibrated.

The admissibility of scientific evidence is governed by Rules 702 and 703 of the North Carolina Rules of Evidence. N.C. Gen. Stat. § 8C-1, Rule 702-703 (1999). "Whether scientific opinion evidence is sufficiently reliable and relevant is a matter entrusted to the sound discretion of the trial court." *State v. Spenser*, 119 N.C. App. 662, 664, 459 S.E.2d 812, 814 (1995) (citation omitted). After a *voir dire* hearing, the trial court determined that John's testimony about turbidity sampling was reliable. Sufficient evidence in the record supports the trial court's finding.

John testified that he has twenty-eight years experience taking water samples after obtaining his master's degree. He had prepared annual reports of water quality for the Army Corps of Engineers investigating impacts on stream water. At the time of trial, John was monitoring turbidity levels during the construction of state route 52 in Tennessee.

Additionally, defense counsel cross-examined John. Defendant offered no evidence of turbidity readings. Nor did defendant offer any evidence that the measurements were inaccurate. Accordingly, we find no abuse of discretion.

Defendant also argues that five jars of water with different turbidity levels should have been excluded because no one authenticated the evidence as being the water in plaintiff's lake. After *voir dire* of plaintiff's expert witness Pam Boaze ("Pam"), the trial court allowed the five jars into evidence for illustrative purposes only to demonstrate what various levels of turbidity look like. Pam authenticated the evidence not as water from the lake, but as demonstrative evidence to assist the jury in determining different levels of turbidity. The exhibits were not introduced as substantive evidence. This assignment of error is overruled.

### VII. Attorney and Expert Witness Fees

Defendant argues on appeal that the trial court's granting of attorney and expert witness fees: (1) erroneously included expenses incurred in prosecuting its common law claims and defending its counterclaim, (2) were not supported by the evidence and findings of fact, and (3) the court improperly awarded expert witness fees without proof that the witnesses were subpoenaed.

### A. Apportionment of Fees

[8] The general rule is that attorney fees may not be recovered by the successful litigant as damages or a part of the court costs, unless

expressly authorized by statute or a contractual obligation. *Stillwell Enterprises, Inc. v. Interstate Equip. Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814 (1980).

N.C. Gen. Stat. § 113A-66(c) (1999) provides:

> The court, in issuing any final order in any action brought pursuant to this section may award costs of litigation (including reasonable attorney and expert-witness fees) to any party, whenever it determines that such an award is appropriate.

This section expressly allows attorney and expert witness fees for civil actions brought under the Sedimentation Pollution Control Act of 1973 ("Sedimentation Act") as an exception to the general rule. N.C. Gen. Stat. § 113A-50 et. seq.

Defendant correctly argues that fees are not recoverable for plaintiff's common law nuisance and trespass claim nor in defending against a counterclaim for abuse of process. *Holly*, 120 N.C. App. at 354, 462 S.E.2d at 243. However, where all of plaintiff's claims arise from the same nucleus of operative facts and each claim was "inextricably interwoven" with the other claims, apportionment of fees is unnecessary. *Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 596, 525 S.E.2d 481, 487 (2000) (multiple state law and federal civil rights claims litigated together could fairly be charged under 42 U.S.C.A. Sec. 1988). This Court applies the reasonable relation test: "reasonableness, not arbitrary classification of attorney activity, is the key factor under all our attorneys' fees statutes" in awarding fees for attorney activity connected with that under the statute. *Coastal Prod. Credit Ass'n v. Goodson Farms, Inc.*, 70 N.C. App. 221, 228, 319 S.E.2d 650, 656, *rev. denied*, 312 N.C. 621, 323 S.E.2d 922 (1984) (allowing attorney fees for bankruptcy, foreclosure, and receivership actions under N.C. Gen. Stat. § 6-21.2, since such activity was connected to the collection of the note).

Here, all three claims were based on the same intertwined nucleus of facts, defendant's land-disturbing activity and its impact on plaintiff's property. The trial court observed the evidence presented in the course of six days of trial as well as the parties' arguments, motions, and responses. On 8 May 2000, plaintiff's attorney amended its motion to remove fees for services involving the same parties in an unrelated matter. We find competent evidence in the record to hold that all three claims arose from a common nucleus of facts making apportionment of the fees unnecessary and unrealistic.

## B.  Showing of Reasonableness

**[9]**  Defendant argues that to support a discretionary award of attorney fees, there must be evidence and findings of fact to support the reasonableness of the award. *Coastal Prod.*, 70 N.C. at 226, 319 S.E.2d at 655. " 'Statutory interpretation properly begins with an examination of the plain words of the statute.' " *West v. Tilley*, 120 N.C. App. 145, 149, 461 S.E.2d 1, 3 (1995) (quoting *Correll v. Division of Social Services*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992)). The allowance of attorney fees under the Sedimentation Act is expressly in the discretion of the trial court. N.C. Gen. Stat. § 113A-66(c); *see McDaniel v. North Carolina Mut. Life Ins. Co.*, 70 N.C. App. 480, 483, 319 S.E.2d 676, 678, *disc. review denied*, 312 N.C. 84, 321 S.E.2d 897 (1984). We review the trial court's award under an abuse of discretion standard. *Wachovia Bank of N.C., N.A. v. Bob Dunn Jaguar, Inc.*, 117 N.C. App. 165, 175, 450 S.E.2d 527, 533 (1994). To show an abuse of discretion, defendant must prove that the trial court's ruling is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Robinson v. Shue*, 145 N.C. App. 60, 65, —— S.E.2d ——, —— (July 17, 2001) (No. 00-1059) (citing *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988); *see also Porterfield v. Goldkuhle*, 137 N.C. App. 376, 528 S.E.2d 71 (2000)).

Defendant argues that it is an abuse of discretion to grant attorney fees without making appropriate findings of fact as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney. *Brookwood Unit Ownership Ass'n. v. Delon*, 124 N.C. App. 446, 449-50, 477 S.E.2d 225, 227 (1996) (quoting *West v. Tilley*, 120 N.C. App. 145, 151, 461 S.E.2d 1, 4 (1995) (quoting *United Lab., Inc. v. Kuykendall*, 102 N.C. App. 484, 494, 403 S.E.2d 104, 111 (1991), *aff'd*, 335 N.C. 183, 437 S.E.2d 374 (1993) (citations omitted)).

In this case, the record reveals that detailed invoices for legal fees were submitted to the trial court along with an affidavit of William Clark, plaintiff's counsel, which sets forth the hourly rates for the legal services rendered, the fact that the hourly rates charged were commensurate with the type of work involved, and are within the range of such fees and charges customarily charged in the community. Plaintiff's attorney amended its motion to reduce its invoice for legal fees for unrelated matters. Defendant has not argued that the hourly fee or time expended was unreasonable, but that portions of the attorney and expert witness fees were not related to this case.

Defendant made the same argument before the trial court. The trial court in its order stated "having considered the arguments of the attorneys as well as their written motions and responses hereby determines that an award of attorney and expert-witness fees is appropriate." Defendant has presented no evidence that the trial court ignored its motion, responses, or arguments. Absent such a showing by defendant, we cannot find an abuse of discretion. The order allowing attorney fees is affirmed.

## C. Expert Witness Fees

**[10]** Also submitted were detailed invoices for expert witness fees along with an affidavit of J. David Young regarding those fees. The Sedimentation Act authorizes the award of costs, including expert witness fees. N.C. Gen. Stat. § 113A-66(c) (1999). The decision to award expert witness fees also rests within the court's discretion. Defendant argues that the trial court erred in awarding expert witness fees since their testimony was not pursuant to a subpoena. N.C. Gen. Stat. § 7A-314 (1999); Brandenburg Land Co. v. Champion Int'l Corp., 107 N.C. App. 102, 418 S.E.2d 526 (1992).

N.C. Gen. Stat. § 7A-314(a) and (d) provide:

(a) A witness under subpoena, bound over, or recognized, other than a salaried State, county, or municipal law-enforcement officer, or an out-of-state witness in a criminal case, whether to testify before the court, Judicial Standards Commission, jury of view, magistrate, clerk, referee, commissioner, appraiser, or arbitrator shall be entitled to receive five dollars ($5.00) per day, or fraction thereof, during his attendance, which, except as to witness before the Judicial Standards Commission, must be certified to the clerk of superior court.

. . . .

(d) An expert witness, other than a salaried State, county, or municipal law-enforcement officer, shall receive such compensation and allowances as the court, or the Judicial Standards Commission, in its discretion, may authorize.

As interpreted by our Supreme Court in State v. Johnson, 282 N.C. 1, 27, 191 S.E.2d 641, 659 (1972), "[s]ections (a) and (d) must be considered together, section (d) modifies section (a) by permitting the court, in its discretion, to increase the compensation and allowances." "The modification . . . does not abrogate the requirement

that all witnesses must be subpoenaed before they are entitled to compensation." *Id.* at 27-28, 191 S.E.2d at 659.

The subpoena requirement under G.S. § 7A-314 has been applied in conjunction with the award of costs pursuant to G.S. § 6-20; *see Campbell v. Pitt Co. Mem. Hosp.*, 84 N.C. App. 314, 352 S.E.2d 902, *aff'd* 321 N.C. 260, 362 S.E.2d 273 (1973), *overruled on other grounds, Johnson v. Ruark Ob. & Gyn. Assoc.*, 327 N.C. 283, 395 S.E.2d 85 (1990); *Brandenburg Land Co. v. Champion Int'l Corp.*, 107 N.C. App. 102, 418 S.E.2d 526 (1992). There is no evidence in the record that plaintiff's expert witnesses appeared under subpoena. Without the witnesses being subpoenaed, the trial court had no authority to award expert witness fees. We hold that the order allowing fees for expert witnesses not subpoenaed must be reversed.

Affirmed in part as to defendant's liability, and remanded for a new trial on damages only, and affirmed in part as to award of attorney fees and costs, and reversed in part as to the award of expert witness fees.

Affirmed in part, reversed in part and remanded.

Judges WYNN and HUNTER concur.