Morris v. Scenera Research, LLC, 2012 NCBC 27.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
09 CVS 19678

ROBERT PAUL MORRIS,                     )
                                        )
            Plaintiff,                  )
                                        )
        v.                              )
                                        )          **JUDGMENT**
SCENERA RESEARCH, LLC, and              )
RYAN C. FRY,                            )
                                        )
            Defendants.                 )
                                        )

{1}    This matter is before the court for Entry of Judgment following a jury trial.
The court narrowed the issues for trial by its grant of partial summary judgment by
order dated January 4, 2012.  The case was called for trial on January 30, 2012.  At
the close of the evidence, the court directed a verdict for Defendant Scenera
Research, LLC  ("Scenera") on the issue of patent ownership because Plaintiff had
not presented evidence necessary to support any claim to ownership under the
guidelines set by the court's summary judgment order.  On February 15, 2012, the
jury returned a verdict in favor of Plaintiff Robert Paul Morris ("Morris") on all
remaining claims.  Morris seeks Judgment on the jury verdict as well as
supplemental relief on his statutory claims.  Scenera seeks judgment on the patent
ownership claim consistent with the court's summary judgment order and its grant
of a directed verdict.

## I.    FACTUAL BACKGROUND

{2}    A broad overview of the claims is instructive in understanding the jury's
verdict on the ten Issues submitted.

{3}     The evidence was undisputed that Morris was employed by Scenera and that his employment ended on July 10, 2009.  The reasons for and who initiated the end of his employment, however, were very much disputed.  The evidence was also undisputed that both Scenera and Defendant Ryan C. Fry ("Fry") were Morris's employers under the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1 *et seq.* ("Wage Act") and the North Carolina Retaliatory Employment Discrimination Act, N.C. Gen. Stat. §§ 95-240 *et seq.* ("REDA").

{4}     The evidence was also undisputed that Morris had, prior to his employment with Scenera, done work as an independent contractor to Scenera pursuant to a written agreement while he was employed by a related company, but that he later become employed by Scenera and that the initial terms agreed to as a part of his employment with Scenera were not reduced to writing.  The Parties agreed that there was a verbal agreement, and that Morris would in addition to a base salary receive bonus compensation for inventions Morris made during his employment.  The bonus compensation included $5,000 to become due at the time of assignment of the invention and execution of a patent application, and an additional $5,000 when a patent issued from such an application.

{5}     The Parties disagreed whether Morris was entitled to a patent issuance bonus if he was not employed at the time a patent issued.  The Parties also disagreed whether Morris was "hired to invent" and the correlated issue of whether he ever had any ownership in any invention he made during the term of his employment.  Morris claimed that he had not been "hired to invent" and that inventions were not a part of his regular employment duties, such that he controlled the option of whether to offer to assign any invention.  Consequently, he contended that he was not obligated to assign and further had the right to rescind any prior assignment for failure of consideration upon Defendants' refusal to pay disputed patent bonuses.  Defendants on the other hand contended that Morris was "hired to invent," and ownership of the inventions is independent of the disputed wage claims, so that ownership of any such invention immediately vested in Scenera.  As a result, Defendants contended that ownership of an invention vested in Scenera

without the need for any express assignment, and that Morris is obligated as a matter of law to assign any such invention not already assigned, with no right to rescind any prior assignment. The Parties also disputed whether Morris was, in addition to the assignment, required to support the patent through the application process in order to "earn" any patent issuance bonus. The undisputed evidence was that on the date Morris's employment ended on July 10, 2009, Scenera had 150 pending patent applications on inventions for which Morris was the inventor. Inventions Morris made during his employment are identified by Exhibit A to his Amended Complaint, which Exhibit is incorporated by reference. Morris, by the time of trial, had assigned executed written agreements on all but a few of these inventions.

{6}     While the Parties disputed whether any bonuses were due after January 1, 2008, they agreed that any such bonus which is owed qualifies as "wages" under the Wage Act. Defendants denied both that any such wages were owed and the amount which Morris claims even if some bonus compensation is due. The disputes included whether bonuses had been cancelled, whether Morris was eligible for bonuses without being employed at the time the bonus was payable, and whether Morris had "earned" bonuses claim within the meaning of the Wage Act. As an initial matter, the Parties disagreed whether patent bonuses were to continue at all after January 1, 2008. The evidence for both Parties indicated that Morris and Scenera reached agreement on some changes to be implemented as of January 1, 2008, in consideration of Defendants potentially implementing a company-wide incentive compensation plan. Morris maintained that he agreed to suspend, but not cancel, patent application bonuses during 2008 to assist with Scenera's cash flow, but that payment of patent issuance bonuses was never suspended. Morris contended that assignment bonuses continued to accrue during 2008 and became payable in 2009 and that he never agreed to any alternative incentive compensation plan for himself that would substitute for his existing bonus plan. Defendants contended that Morris had agreed to cancel the patent bonus system entirely, and that Defendants later did implement a company-wide incentive plan more aligned with the

company's profitability, but that Morris demanded greater individual considerations to which he was not due.

{7}     Morris contended that he is entitled to recover $210,000 for application and issuance bonuses which had accrued as of the date Morris's employment ended in July 2009.  Of that sum, $145,000 had accrued prior to January 1, 2008, and in light of the voluntary payment suspension for 2008, became payable on January 15, 2009.  An additional $65,000 accrued after January 1, 2008, and was payable no later than July 15, 2009, the first fifteenth of the month following the end of a calendar quarter.  The evidence demonstrated that Morris received $20,000 in 2008 beyond his normal base compensation.  Morris contends this compensation was for patent bonuses; Defendants contend it was not, because patent bonuses had been eliminated.  Morris believed that Defendants should receive a credit for $20,000 in patent bonuses paid, but that if the $20,000 payment was not for patent bonuses, he was then entitled to accrued unpaid bonus compensation of $230,000 rather than the $210,000 on which he based his claim.

{8}     The evidence was clear that negotiations over disputed bonuses were undertaken in 2009 when Scenera requested that Morris execute a written employment agreement, and that Morris was the only regular Scenera employee who did not have a written agreement.  The evidence also established that throughout these negotiations, Morris consistently made clear his belief that he was entitled to bonuses that had continued to accrue after January 1, 2008.   However, it was not until late in the negotiations for an employment agreement that Morris also demanded that he be paid future patent issuance bonuses irrespective of whether he remained employed.  The evidence established that during negotiations Scenera considered payment of $210,000 without admitting that this sum was being paid as earned wages, but further that Scenera steadfastly refused to consider paying patent issuance bonuses on patents issued after Morris's employment ended.  Rather, Defendants' evidence was that Scenera had a consistent policy applied to all employees, including Morris, that payment of issuance bonuses was conditioned on continued employment.

{9} Morris claimed that he had "earned" the issuance bonus immediately upon assigning the invention to Scenera, such that they were wages due to be paid when his employment terminated, even if the payment of those bonuses may have been deferred until patent issuance, assuming his employment had continued. Scenera contended Morris would only earn an issuance bonus by continuing his support of the patent applications, which he had refused to do.

{10} As related to the REDA claim, Morris presented evidence that he had during the term of his employment asserted claims that he was entitled to issuance bonuses irrespective of his continued employment. The evidence also established that he refused to assign further inventions or sign further patent applications until the wage dispute was resolved. The evidence also established that, when the Parties could not agree on multiple terms being proposed by Morris for a written employment agreement, Morris advised Scenera that an employment agreement appeared out of reach and that he would only consider a severance agreement whereby Morris would continue to support the patent portfolio as an independent contractor. Morris further suggested that he was entitled to challenge Scenera's ownership of patents or applications based on Morris inventions. Ultimately, Morris's employment ended and no independent contractor agreement was ever agreed to. Morris contended that Scenera terminated Morris in order to achieve leverage in contract negotiations, and did so in retaliation for Morris's continued insistence for his patent bonuses. Defendants contended that it was Morris, not Scenera, who elected to discontinue Morris's employment, such that he "effectively resigned."

{11} Morris introduced evidence that Scenera has enjoyed a ninety percent (90%) average rate of patents issuing from patent applications, and that the success rate on applications for Morris's inventions was somewhat higher. Morris then contended that the amount of his bonus wages was then "calculable" within the meaning of the Wage Act at the time of termination. Morris contended that he is entitled to patent issuance bonuses calculated by a formula of 150 pending patent applications at $5,000 per application multiplied by the ninety percent (90%)

success rate. This calculation yields a total of $675,000 in unpaid patent bonuses (150 x $5,000 x 90%= $675,000). Morris contended that these payments had been fully earned and became due on July 15, 2009. Defendants claimed that Morris was not eligible for and had not earned bonuses for patents which had not issued at the time Morris's employment ended.

{12} Morris's Wage Act claim was for the wages he contended were due, along with statutory penalties. His REDA claim was to recover damages from his retaliatory termination. Defendants denied any liability under either Act.

{13} Scenera asserted one counterclaim against Morris for breaches of fiduciary duty. That counterclaim was dismissed just before trial. Scenera also counterclaimed for damages because of Morris's failure to support Scenera's patent rights. Defendants maintained that counterclaim and submitted expert evidence to prove their damages. Defendants further contended that Morris refused to seek alternative employment after July 10, 2009, such that any recovery for retaliatory discharge must be reduced for failure to mitigate damages.

## II.  THE JURY VERDICT

{14} The court submitted ten Issues to the jury in light of these various contentions. Issues 1 and 2 were to determine whether the bonus program had been cancelled as of January 1, 2008, and if not, the amount of bonuses that had accrued but had not been paid as of the end of Morris's employment. Issue 3 was to determine both whether Morris was eligible for patent issuance bonuses without continued employment and, if so, whether he had done everything necessary to earn patent issuance bonuses for patents that had not issued prior to the end of his employment. Issue 4 was to determine the amount owed for patent issuance bonuses for patents to issue in the future. Issues 5, 6, and 7 were to determine whether Scenera terminated Morris rather than his having resigned, and if so, whether the termination was retaliatory. Issues 8 and 9 were to determine whether Morris had suffered damages because of a retaliatory termination and, if so, the amount by which those damages should be reduced because of a failure to mitigate

damages.  Issue 10 was to determine whether Scenera was entitled to any recovery from Morris on its counterclaims.

{15}   The court, by its summary judgment order, determined that Morris was "hired to invent," such that ownership of any invention in dispute had immediately vested in Scenera absent Morris's ability to prove an express agreement to the contrary. The court directed a verdict in Scenera's favor on patent ownership when Morris presented no competent evidence of any such agreement.  As such, no patent ownership issue was submitted to the jury and the jury was instructed that Scenera owns the inventions and patents that may issue pursuant to them.

{16}   The jury issued its unanimous Verdict in Morris's favor on all Issues as follows:

1.  Was Plaintiff Robert Paul Morris entitled to any patent bonuses after January 1, 2008?
    **ANSWER:**
    a.  Yes __✓__
    b.  No _____
    **If you answer this issue "yes," then proceed to issue number 2.  If you answer this issue "no," do not answer issues number 2, 3 and 4 but proceed to issue number 5.**

2.  If you answered issue number 1 "yes," what amount of patent bonus payments are owed to Plaintiff because patent applications were filed or patents issued as of July 10, 2009?
    **ANSWER**: $ _210,000_

3.  If you answered issue number 1 "yes," is Plaintiff entitled to receive patent issuance bonuses for patent applications pending on July 10, 2009?
    **ANSWER:**
    A.  Yes __✓__
    B.  No ____
    **If you answer this issue "yes" then answer issue number 4; if you answer this issue "no," do not answer issue number 4 and proceed to issue number 5.**

4.  If you answered issue number 3 "yes," what amount of patent issuance bonuses is Plaintiff entitled to recover because of patent applications pending as of July 10, 2009?
    **ANSWER:** _$675,000_

5. Did Defendants terminate Plaintiff's employment?

   **ANSWER:**

       a. Yes   ✓

       b. No   _____

   **If you answer this question "yes," then proceed to issue number 6. If you answer this issue "no," then do not answer issues 6 through 9 but proceed to issue 10.**

6. If your answer to issue number 5 is "yes," was Plaintiff's claim for or his threat to file a claim or suit to collect for patent bonuses a substantial factor in Defendants' decision to terminate Plaintiff's employment?

   **ANSWER:**

       a. Yes   ✓

       b. No   _____

   **If you answer this question "yes," then proceed to issue number 7. If you answer this issue "no," then do not answer issues 7 through 9 but proceed to issue 10.**

7. If your answer to issues number 5 and 6 are "yes," would Defendants have terminated Plaintiff even if he had not made a claim for or threatened to make a claim or file suit to collect patent bonuses?

   **ANSWER:**

       a. Yes   _____

       b. No   ✓

   **If you answer this issue "no," then proceed to issue number 8. If you answer this issue "yes," then do not answer issues 8 and 9 but proceed to issue number 10.**

8. If you have answered issues number 5 and 6 "yes" and issue number 7 "no," what amount of damages is Plaintiff entitled to recover for retaliatory termination?

   **ANSWER:** $540,000

9. By what amount, if any, should Plaintiff's damages be reduced?

   **ANSWER:** $150,000

10. What amount, if any, is Scenera Research, LLC entitled to recover from Plaintiff for breach of his assignment agreements?

    **ANSWER:** $0

## III. REQUEST FOR SUPPLEMENTAL RELIEF

{17} Following the Verdict, Morris requested judgment for the amounts awarded by the jury plus supplemental relief, including liquidated damages and attorneys' fees pursuant to the Wage Act and treble damages and attorneys' fees pursuant to REDA.

### A. Liquidated Damages and Interest Under the Wage Act

{18} N.C. Gen. Stat. § 95-25.22 allows for recovery of unpaid wages. Any bonus compensation due to Morris constituted wages within the meaning of the Wage Act. As employers, Scenera and Fry are jointly and severally liable for amounts owed for unpaid wages. N.C. Gen. Stat. § 95-25.22(a1) provides for the additional recovery of interest and liquidated penalties. The statute provides:

> In addition to the amounts awarded pursuant to subsection (a) of this section, the court shall award liquidated damages in an amount equal to the amount found to be due as provided in subsection (a) of this section, provided that if the employer shows to the satisfaction of the court that the act or omission constituting the violation was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this Article, the court may, in its discretion, award no liquidated damages or may award any amount of liquidated damages not exceeding the amount found due as provided in subsection (a) of this section.

{19} Defendants bear the burden of proving their good faith and reasonable grounds for believing that their acts did not violate the Wage Act. In the absence of such proof, the statute directs the court to grant damages in an amount equal to the unpaid wages owed. The issue of good faith is for the court's determination.

{20} The jury rejected Defendants' contention that Morris agreed to cancel the patent bonus compensation plan as of January 1, 2008. Morris additionally has contended that, as a matter of law, a cancellation of bonuses as of this date could not have been effective even if Morris had agreed, because any cancellation would only be effective after written notice issued before the bonus had been earned. N.C. Gen. Stat. § 95-22.13(3). As a result, Morris contends that because the jury accepted his argument that any application or issuance bonus had been "earned"

within the meaning of the Wage Act when Morris voluntarily assigned the invention, the wages could not have been forfeited by a voluntary verbal agreement.

{21} There is no clear guidance from the North Carolina appellate courts as to what constitutes "good faith" and "reasonable grounds for believing" within the meaning of the Wage Act. Federal courts applying the Fair Labor Standards Act, analogous to the Wage Act, have developed a standard that examines an employer's conduct and belief both subjectively and objectively. *See, e.g.*, *Kornegay v. Aspen Asset Group, LLC*, 204 N.C. App. 213, 246 (2010), *Armitage v. Emporia*, 782 F. Supp. 537 (D.Kan. 1992). Morris contends that the objective component requires, at a minimum, that the employer actually consult the statute and then form an objectively reasonable position that the statute would not be violated upon taking certain actions. According to Morris, it logically follows that an employer cannot have an objectively reasonable ground to believe the statute was not violated if the statute was not consulted in the first instance. Morris stressed evidence that neither Fry nor his financial assistant Ms. Schmidlein were aware of or consulted the Wage Act during the course of their negotiations with Morris, evidence which Morris apparently contends also supports a finding that Scenera never consulted the Wage Act or related regulations before terminating Morris, thereby foreclosing any good faith defense to liquidated damages. Morris further argues that Defendants cannot invoke any defense of reliance on advice of counsel because Defendants neither waived the attorney-client privilege nor presented specific testimony as to what advice counsel may have given. Morris is correct that Defendants neither asserted an "advice of counsel" defense nor introduced testimony as to what advice counsel provided. Scenera's evidence demonstrated, however, that both counsel for Morris and for Defendants negotiated their respective positions with reference to the Wage Act. The inference is clear that Defendants' counsel had consulted the Wage Act while Morris was still employed.

{22} Defendants contend that they have demonstrated their good faith and their reasonable belief that they were not in violation of the Wage Act by their proof that they subjectively believed and had objectively reasonable grounds to believe

that they did not violate the Wage Act because they did not owe wages based on the agreements they had reached with Morris. Defendants argue that they reasonably believed, based on Morris's own words and actions, that the bonus program had been cancelled as of January 1, 2008. Their position was, Morris contended, undermined by Fry's reference to his fellow investors during the course of negotiations that bonuses had been "suspended" rather than "cancelled." Defendants separately point to the absence of any evidence that the Parties had ever agreed that Morris would be entitled to any patent issuance bonus if he were not employed when the patent issued. Evidence established that Morris's regular practice as a supervisor was to sign employment letters for other inventors which expressly provided that an employee had to be employed at the time of issuance in order to receive an issuance bonus.

{23} Morris contends that Defendants are foreclosed from this argument as to any agreement made at employment inception because they cannot enforce or rely on employment terms that had never been reduced to writing. Morris reads N.C. Gen. Stat. § 95-25.13 to require an employer in all instances to advise an employee of his compensation terms in writing. Morris acknowledges that N.C. Gen. Stat. § 95-23.13(1) allows an initial notification to be oral, but other provisions of N.C. Gen. Stat. § 95-23.13 mandate that compensation terms and conditions then be reduced to writing and are enforceable by the employer only if provided by a written notification. To the contrary, Defendants contend that N.C. Gen. Stat. § 95-25.13(1) allows the initial compensation agreement to be oral and only requires written notification for a subsequent change in employment terms.

{24} The court finds by the greater weight of the evidence that Defendants reasonably believed that Morris and Defendants agreed at the inception of Morris's employment that Morris would receive patent application and patent issuance bonuses, that his employment at the time of patent issuance was a condition of the patent issuance bonuses and that issuance bonuses required continued employment. Defendants never changed this condition which was in place when Morris's employment began. That belief was not unreasonable, even after an

informed reading of the Wage Act and related regulations. The court finds that when refusing to pay issuance bonuses for patents which had not yet issued at the time Morris's employment ended, Defendants acted in good faith and with a reasonable belief that they were not in violation of the Wage Act. Accordingly, Morris is not entitled to recover liquidated damages in an amount equal to the $675,000 the jury awarded for patent issuance bonuses for patents which had not yet issued.

{25} However, the court finds from the greater weight of the evidence that Defendants have not adequately demonstrated good faith or reasonable grounds for a belief that their failure to pay application and issuance bonuses accruing during the period of January 1, 2008 through July 10, 2009 was not a violation of the Wage Act. While there is evidence to support Defendants' subjective good faith, there was no evidence supporting a conclusion that a change in Morris's wages was reduced to writing until June 2009, shortly before his employment ended. The court finds that Morris is entitled to recover the $210,000 awarded by the jury together with liquidated damages in an equal amount. The court, considering the greater weight of the evidence, further concludes in its discretion that it would award liquidated damages in the amount of $210,000, even if Defendants had proven that they acted in good faith or with a reasonable belief within the meaning of the Wage Act.

{26} The court finds that Morris is entitled to recover interest at the legal rate set forth in N.C. Gen. Stat. § 24-1 upon the bonus compensation, which had accrued as of July 10, 2009. The court finds that $145,000 of such compensation was due on January 15, 2009, such that interest on that amount should accrue from that date. Additionally, $65,000 of such compensation was due on July 15, 2009, such that interest on that amount should accrue from that date. Any patent issuance bonuses for patents, which had not issued as of July 10, 2009, would not have been due until July 15, 2009, such that interest on the amount of $675,000 should be calculated beginning on that date. The statute does not provide for the award of pre-judgment interest for liquidated damages, so that interest on the liquidated damages of $210,000 accrues from the date of this Judgment.

## B. Treble damages under REDA

{27} N.C. Gen. Stat. § 95-243 allows for the recovery of damages for a retaliatory employment termination. N.C. Gen. Stat. § 95-243(c) provides that the court shall treble damages if the employers' violation was "willful." Morris concedes that the amount potentially subject to trebling is $390,000, which is the $540,000 damages award less the $150,000 amount to be deducted for failure to mitigate damages.

{28} It is clear that the jury rejected Defendants' alternative contention that Morris resigned or that they would have terminated Morris even if he had not made the disputed wage claims. Morris contends that this necessarily compels the court to conclude that the violation of REDA was willful. The court does not agree.

{29} The court does not purport here to summarize all of the evidence surrounding the discussions, negotiations and circumstances that ultimately led to the end of Morris's employment. But the court considers that certain key evidence precludes a finding of willfulness. Morris, both in final jury arguments and in post-verdict submissions, highlighted the communications evidenced by Exhibits 158 and 221 admitted at trial. These Exhibits arose in the context of communications between Morris and Defendants related to whether the bonus plan had been cancelled. These documents do not inescapably lead to the conclusion that Scenera's termination of Morris was necessarily a willful violation of REDA as Morris argues.

{30} Morris clearly demanded payment of bonuses, which he contended had been suspended but were accruing during 2008. In contrast, Defendants maintained that any individual bonus plan had been cancelled and that Morris should be expected to execute a written employment agreement as other employees had done. After negotiations between Morris and Fry reached no resolution, negotiations then continued between counsel for the Parties. Morris has consistently argued that Scenera purposely terminated Morris under the ruse of an effective resignation in order to obtain leverage in negotiations of an employment agreement. Defendants have contended that Morris himself made clear that he

wished his employment to end.  Defendants contend they were willing to continue to negotiate in good faith for an independent contractor agreement and to pay Morris the disputed $210,000 wage claim, although they categorically rejected the claim to future issuance bonuses.  Defendants have argued that Morris thereafter demanded such unreasonable terms that no such independent contractor agreement could be reached.  Disputes as to patent ownership and obligation to assign inventions were much in play during these negotiations.

{31}  Draft employment agreements were exchanged in late May or early June 2009.  Morris believed that Scenera was overreaching, in that any bonus being offered was discretionary and could be withdrawn at any time, while Morris was being asked to forego his claim to accrued and future patent bonuses in exchange. Scenera believed that Morris was demanding unreasonable terms for an employment agreement.  As the dispute intensified, on July 2, 2009, Morris's counsel Tony Biller ("Biller") wrote an e-mail, included in Exhibit 221, in which he stated that,

> [n]egotiations have established to us that our respective clients have fundamentally different perspectives on Mr. Morris's value and contributions to Scenera.  As you know, in a free market under such circumstances, it's best to part ways.  Accordingly, Mr. Morris wants to immediately resolve the outstanding issue regarding non-payment of patent bonuses and negotiate a termination agreement.
> . . .
> [s]ince the parties are so far apart on a permanent employment agreement, and the part time concept does not look workable, we suggest pursuing a separation agreement.

Biller suggested terms for such an agreement.  He also indicated that he would initiate legal recourse to collect the unpaid bonuses if they had not been paid by July 13, 2009.

{32}  Subsequent to Biller's e-mail, Fry and Morris spoke directly, after which Morris wrote Fry two July 7, 2009 e-mails included in Exhibit 158.  The first e-mail concluded with the following statement: "There is one proposal only.  That is, the payment of the $210k, the issue bonuses, and my terminating my employment are

all elements of a single proposal. They stand together." The second e-mail encouraged Fry to have his counsel, Haile Miller ("Miller"), contact Biller to clarify any confusion.

{33} Both Miller and Biller affirmed that they did not talk again before Miller responded to Biller's July 2, 2009 e-mail by her e-mail on July 9, 2009, which begins with the assertion that, "Scenera understands that Mr. Morris has put forth an effective resignation" and indicated that Scenera "accepts his resignation effective tomorrow morning, July 10, 2009." Miller indicated that Scenera contended that no bonus compensation was due Morris, but then offered payment of $210,000 "on condition that Mr. Morris acknowledge that such sum is the full amount due and owing him through the date of termination," and provided that Scenera would make those payments in two successive payroll periods. Miller continued, making several statements, including that Scenera refused to pay any future patent issuance bonuses and strongly worded cautions that Morris would suffer adverse consequences should he elect to file suit, and also including cataloguing negative perceptions that may impair his ability to secure alternative employment.

{34} While Morris did not specifically resign, it was also apparent that Morris was unlikely to continue his employment. It was also clear that no agreement on the wage claim was imminent and that Morris intended to further prosecute his wage claims and intended to continue to dispute patent ownership and obligation to assign inventions while those claims remained unresolved.

{35} Scenera offered to pay the disputed $210,000, but never without condition. It is, however, unclear whether Morris would have agreed to sign an employment agreement had Scenera paid that amount without condition while also refusing the other elements that Morris insisted must be included in any employment agreement, including future patent issuance bonuses.

{36} The court acknowledges that the jury rejected Scenera's contention that Morris had resigned. But in considering willfulness the court also considers that Morris himself raised the issue of severing his employment and preferring to continue his association only under a consulting arrangement. Ultimately, the

failure to reach an agreement, if based on wages, related to that portion of the wage claim for patent issuance bonuses for patents which had not yet issued. On this issue, the court has concluded that Defendants' denial was in good faith.

{37} On the issue of treble damages, the relevant question is whether Defendants acted in conscious and intentional disregard of or indifference to Morris's rights when terminating his employment. The court concludes they did not. Considering all the claims and positions asserted, and having heard the entire evidentiary presentation, the court concludes that Defendants did not willfully violate REDA. Accordingly, the damages the jury awarded for retaliatory discrimination should not be trebled.

## IV. SCENERA'S REQUEST FOR JUDGMENT ON PATENT OWNERSHIP

{38} Morris maintained through discovery, summary judgment, and trial that he had not been hired by Scenera to invent and that, as a result, he was entitled to refuse to assign inventions to Scenera and to rescind those assignments he had made upon Scenera's refusal to recognize Morris's wage claims. Admittedly, Morris has consistently testified that he did not wish to sever his relationship with the patent portfolio or his relationship with fellow workers. Morris lays the loss of those relationships entirely at Scenera's feet because of its refusal to honor the wage claims. In short, Morris contends that litigation would not have been necessary had Scenera honored the wage claims. Scenera in turn contends that the litigation became necessary because Morris reached well beyond his wage claims with his unfounded insistence of patent ownership, and in doing so, created a cloud on the very patents from which any such wage claim would be derived.

{39} The court confronted the disputed contentions as to ownership upon Scenera's motion for summary judgment and wrote an extended memorandum of opinion for its reasons in deciding in Scenera's favor. In summary, the court determined that Morris was hired to invent. Therefore, Scenera's ownership of those inventions could only be successfully challenged if Morris were able to offer competent evidence to prove that he and Scenera had reached an express agreement

varying the legal presumption of ownership, as established in *Speck v. North Carolina Dairy Foundation, Inc.,* 311 N.C. 679, 686, 319 S.E.2d 139, 143 (1984). Morris offered no such evidence at trial. The court accordingly directed a verdict in Scenera's favor at the close of the evidence.

{40} Morris identified inventions he made during the course of his employment in Exhibit A to his Complaint. Scenera offered no evidence of any additional invention. The evidence documented that there are a small number of inventions Morris identified that have not been reduced to a written assignment agreement.

{41} Scenera is entitled to a declaration that it owns each invention that Morris made during the term of his employment with Scenera and that ownership vested in Scenera at the time of invention. It is entitled to a declaration that Morris is obligated to execute assignments of any such invention which has not yet been expressly assigned. Scenera is further entitled to a declaration that assignment agreements executed by Morris are not subject to challenge on the basis that Morris, rather than Scenera or its assignees, owns the invention.

{42} The evidence presented in this case is, however, insufficient for the court to enter a declaratory judgment foreclosing any other dispute that might arise related to assignment agreements.

## V. ATTORNEYS' FEES AND COSTS

{43} N.C. Gen. Stat. § 95-25.22 (d) and § 95-243 (c) each provide that the court may award a successful plaintiff reasonable costs and expenses, including attorneys' fees.

{44} Morris succeeded on each of the ten Issues submitted to the jury. He was, however, not the successful litigant on the issue of fraudulent inducement and patent ownership which the court resolved adversely to him on summary judgment. He successfully defended Scenera's counterclaims.

{45} The court concludes that Morris should recover attorneys' fees as a successful litigant, but the total fees and expenses sought should, in part, be allocated among the claims on which he was successful and those on which he was

not. The court has very carefully considered Morris's argument that no allocation of fees should be made because no litigation would have been required at all if Defendants had paid the wages Morris demanded. As noted above, the court is not convinced that the case is as simple as that. The court has considered the holdings in *Whiteside Estates, Inc. v. Highlands Cove, L.L.C.,* 146 N.C. App. 449, 467-68, 553 S.E.2d 431, 443-44 (2001) (holding that reasonableness does not require apportionment of fees necessary when claims are "inextricably interwoven"), and *Hamilton v. Memorex Telex Corp.,* 118 N.C. App. 1, 16-17, 454 S.Ed.2d 278, 286 (1995) (refusing to apportion fees where litigation of similar claims directly benefitted successful class claims under Wage Act).

{46} Morris's counsel has submitted affidavits, which document fees charged and costs incurred during the prosecution of this litigation. Counsel has further affirmed by affidavit that the time spent was reasonably necessary for the prosecution of the case and that the rates charged were those reasonably and regularly charged by that counsel for similar litigation. Based on the court's familiarity with fee applications in other cases, the court finds that hourly rates charged by Morris's counsel are well within the ranges of fees charged in Wake County for litigation of a similar nature. While the court has not reviewed fee statements from defense counsel, based on its general familiarity with the Raleigh legal environment, and having reviewed fee applications in other matters, the court concludes that Plaintiff's counsel's rates are likely significantly less than hourly rates charged by defense counsel.

{47} Although the case proceeded in federal court through the completion of discovery, save and except for two remaining discovery motions which this court addressed, the undersigned personally was involved in all post-discovery proceedings, including dispositive motion practice, trial and post-trial motion practice the undersigned observed all aspects of pre-trial and trial strategy. While the Parties honored the confidentiality of the several mediation and settlement efforts prior to trial, the undersigned personally participated to a limited degree in settlement negotiations during trial.

{48}   The court is specifically well acquainted with the reputation and skill of the various counsel involved in the litigation.  The court finds that Morris's counsel are highly skilled and competent and that they represented Morris with zeal and diligence.

{49}   The court has reviewed all statements of Morris's counsel *in camera*.  The court is now thoroughly familiar with the nature and scope of the legal services rendered during the course of the litigation in the federal and state court.

{50}   In reviewing and issuing its orders on discovery and summary judgment, the court reviewed and became familiar with the record of proceedings in the case in the United States District Court for the Eastern District of North Carolina before its remand to the Wake County Superior Court.

{51}   The court has carefully considered and is well-informed regarding those factors to be considered in determining the reasonableness of requested attorneys' fees as required by N.C. Gen. Stat. § 95-25.22(d) and the holding of *Williams v. New Hope Found. Inc.*, 192 N.C. App. 528, 665 S.E.2d 586 (N.C. App. 2008).

{52}   Morris has submitted affidavits documenting attorneys' fees and expenses incurred totaling over $800,000 to date, including fees for work after verdict.

{53}   The court, in its discretion, concludes that Morris should recover attorneys' fees and expenses totaling $450,000.

## VI.   CONCLUSION

{54}   Accordingly, it is ORDERED, ADJUDGED and DECREED that:

1) Plaintiff is entitled to recover of Scenera and Fry, jointly and severally, the following:

   a. The sum of $210,000 representing unpaid wages for patents that had been applied for or had issued on or before July 10, 2009;

   b. Liquidated damages in the amount of $210,000;

   c. The sum of $675,000 representing patent issuance bonuses for patent applications pending as of July 10, 2009, without further liquidated damages;

d. The sum of $390,000 for damages suffered as a result of retaliatory termination, representing damages of $540,000 reduced by $150,000 because of Plaintiff's failure to mitigate his damages, without such damages being trebled;

e. Attorneys' fees and costs in the amount of $450,000;

f. Interest at the statutory rate provided by N.C. Gen. Stat. § 24-1:

i. on $145,000 from January 15, 2009;

ii. on $65,000 from July 15, 2009;

iii. on $675,000 from July 15, 2009;

iv. on $210,000 from the date of this Judgment;

v. on $390,000 from the date of this Judgment;

vi. on $450,000 from the date of this Judgment;

2) The court declares that Scenera is the owner of each of the inventions, patent applications, and patents identified in Exhibit A to Morris's Complaint, a copy of which is attached to this Judgment. Ownership of those inventions vested in Scenera at the time of invention;

3) The court declares that Morris is obligated to and shall execute an assignment to Scenera of any of the inventions identified in Exhibit A to Morris's Complaint that he has not already assigned;

4) Specifically, Morris must therefore assign to Scenera and/or its affiliates ownership of the following patent applications: Patent Application 61/502,918; Patent Application 61/502,928, Patent Application 61/502,931, Patent Application 61/502,924; Patent Application 61/502,922; Patent Application 11/774,989;

5) The court declares that the assignment agreements which have been or are to be executed by Morris as directed by this Judgment represent ownership which was vested in Scenera at the time of invention, and that such assignments are not subject at any time prior to this judgment to attack on by reasons of any assertion that such inventions were or are owned by Morris;

6) Defendant Scenera shall have and recover nothing of Morris by reason of its counterclaim for damages, and such counterclaim is dismissed with prejudice.

7) Defendants shall bear their own costs and attorneys' fees.

8) Plaintiff's pre-judgment Motion for Order of Attachment and Injunction in Aid of Execution and Request for Peremptory Hearing filed on April 26, 2012 is DENIED.

This 14th day of May, 2012.