IN THE SUPREME COURT OF NORTH CAROLINA

No. 429PA13

Filed 10 June 2016

ROBERT PAUL MORRIS

v.

SCENERA RESEARCH, LLC and RYAN C. FRY

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 229 N.C. App. 31, 747 S.E.2d 362 (2013), finding no error in part, affirming in part, and reversing in part a memorandum opinion entered on 4 January 2012, a judgment entered on 14 May 2012, and an order entered on 27 June 2012, all by Judge James L. Gale in Superior Court, Wake County, and remanding in part for further judgment. On 18 December 2014, the Supreme Court allowed plaintiff's conditional petition for discretionary review as to additional issues. Heard in the Supreme Court on 18 May 2015.

*Young Moore and Henderson P.A., by Walter E. Brock, Jr., Andrew P. Flynt, and Patrick M. Aul, for plaintiff-appellee/appellant.*

*Parker Poe Adams & Bernstein LLP, by Catharine B. Arrowood, Scott E. Bayzle, and Catherine R.L. Lawson, for defendant-appellants/appellees.*

*Smith Moore Leatherwood LLP, by Richard A. Coughlin and Matthew Nis Leerberg, for North Carolina Chamber of Commerce, North Carolina Association of Defense Attorneys, and North Carolina State University, amici curiae.*

*Robinson, Bradshaw & Hinson, P.A., by John R. Wester and Thomas Holderness, for Qualcomm Incorporated, Qualcomm Technologies, Incorporated, Cisco Systems, Inc., Microsoft Corp., and Cree, Inc., amici curiae.*

BEASLEY, Justice.

This appeal arises out of a compensation and intellectual property dispute between Robert Paul Morris ("plaintiff") and his former employer Scenera Research, LLC and its CEO Ryan Fry (collectively, "defendants"). In 2004, Stanley Fry, defendant Ryan Fry's father, hired plaintiff as Scenera's first employee. The parties did not sign a written employment agreement. They did, however, have several discussions concerning the details of plaintiff's employment. Plaintiff expressed interest in inventing, but testified at trial that he had no obligation to invent. According to plaintiff, inventing was not part of his regular job duties for which he received a base salary.

Plaintiff participated in Scenera's patent bonus program (the "bonus program"), under which he received $5000 for every patent application submitted to the United States Patent and Trademark Office ("PTO") and another $5000 if and when the patent issued. Defendant Ryan Fry became concerned with the bonus program's viability and suspended Scenera's bonus program for all employees effective 1 January 2008. Plaintiff testified that Scenera owed him $210,000 in patent bonuses at this time. Plaintiff voluntarily suspended receipt of payments beginning in January 2008, believing that defendant Fry had promised to reinstate the original bonus program if Scenera did not create a new compensation plan and, thereafter, provide plaintiff a written employment contract.

As of 2009, the parties had not been able to agree on a new compensation plan and plaintiff still had no written contract. Frustrated with this lack of progress, plaintiff hired a lawyer and threatened to sue under the North Carolina Wage and Hour Act ("WHA") for the $210,000 in bonuses owed. The parties dispute the events that followed. Plaintiff claimed that Scenera fired him in retaliation for his threatening to bring a lawsuit, thereby violating the North Carolina Retaliatory Employment Discrimination Act ("REDA"). Defendants countered that plaintiff clearly intended to leave the company and that his lawyer indicated the only option was to negotiate a severance package—thus, plaintiff "effectively resigned" and defendants merely accepted the resignation. Defendants tendered plaintiff a check for $210,000 on the condition that he acknowledge Scenera's ownership of patent applications filed and patents issued between 1 January 2008 and 17 June 2009. Plaintiff did not accept defendants' offer.

Plaintiff filed a complaint against defendants alleging breach of contract, fraudulent inducement, unjust enrichment, and WHA and REDA violations. On 1 April 2011, the Chief Justice designated this action as a complex business case and assigned it to the North Carolina Business Court. Defendants asserted a counterclaim for declaratory judgment that (1) Scenera owns all inventions plaintiff developed during his employment, and (2) plaintiff was not entitled to bonuses for patent applications filed or patents issued any time after January 2008. Defendants also sought damages for breach of fiduciary duty and for plaintiff's failure to support

prosecution of patent applications to the PTO.

Both parties moved for summary judgment. The trial court granted defendants' motion in part, concluding that plaintiff was "hired to invent," and that ownership of the patents presumptively rested with Scenera, with the onus on plaintiff to prove that an agreement between the parties vested ownership with him. The trial court also granted defendants' summary judgment on plaintiff's claims for fraudulent inducement and unjust enrichment. The trial court denied the remainder of plaintiff's and defendants' motions for summary judgment.

Trial began on 30 January 2012. At the close of the evidence, the trial court granted defendants' motion for a directed verdict with respect to the issue of patent ownership, but denied defendants' motion for a directed verdict on the WHA and REDA claims. The trial court submitted the rest of the issues to the jury, and the jury awarded plaintiff (1) $210,000 in patent bonuses under the WHA for applications filed or patents issued between 1 January 2008 and 17 June 2009, (2) $675,000 under the WHA in patent issuance bonuses for patent applications pending as of 17 June 2009, (3) and $390,000 for REDA violations.

Plaintiff then requested liquidated damages and attorneys' fees under the WHA, and treble damages and attorneys' fees under REDA. The trial court denied plaintiff's request to treble damages, awarded $450,000 in attorneys' fees, and awarded $210,000 in liquidated damages for patents that have already issued. The trial court denied plaintiff's request for liquidated damages under the WHA for

patents that had not yet issued. The trial court further ruled that Scenera owned all of the inventions, patents, and patent applications listed in plaintiff's complaint, required plaintiff to assign any unassigned patent applications to Scenera, and ruled that Scenera could not recover damages under its counterclaims. Defendants moved for judgment notwithstanding the verdict (JNOV), and the trial court denied the motion. All parties appealed.

The Court of Appeals affirmed the trial court's ruling on the motions for directed verdict and JNOV, liquidated damages, WHA damages, and REDA damages. The court reversed, however, the trial court's ruling that plaintiff could not pursue rescission. *Morris v. Scenera Research LLC*, 229 N.C. App. 31, 747 S.E.2d 362 (2013). All parties appealed.

I

A

Defendants contend that the trial court should have granted their motions for directed verdict and JNOV as to whether plaintiff was entitled to patent issuance bonuses for patents still pending when his employment with Scenera ended. To survive a motion for directed verdict or JNOV, the non-movant must present "more than a scintilla of evidence" to support its claim. *Stark v. Ford Motor Co.*, 365 N.C. 468, 480, 723 S.E.2d 753, 761 (2012) (citation omitted). While a scintilla is "very slight evidence," *State v. Hawkins*, 155 N.C. 466, 470, 71 S.E. 326, 328 (1911) (quoting *State v. White*, 89 N.C. 462, 464-65 (1883)), the non-movant's evidence must

still "do more than raise a suspicion, conjecture, guess, surmise, or speculation as to the pertinent facts in order to justify its submission to the jury," *Jenrette Transp. Co. v. Atl. Fire Ins. Co.*, 236 N.C. 534, 539, 73 S.E.2d 481, 485 (1952) (citation omitted). The trial court must construe the evidence in the light most favorable to the non-movant and resolve all evidentiary conflicts in the non-movant's favor. *Smith v. Price*, 315 N.C. 523, 527, 340 S.E.2d 408, 411 (1986) (citations omitted). We review this question of law de novo. *Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 267 (2013) (citations omitted).

The WHA provides:

> Employees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday either through the regular pay channels or by mail if requested by the employee. Wages based on bonuses, commissions or other forms of calculation shall be paid on the first regular payday after the amount becomes calculable when a separation occurs.

N.C.G.S. § 95-25.7 (2015).

At trial, plaintiff testified that he, like other Scenera employees, had a unique bonus plan, and that he was never informed that continued employment with Scenera was a prerequisite for receiving patent issuance bonuses. Plaintiff confirmed in his testimony that "the issuance bonus . . . was earned at the time the patent application was filed." He further testified that after a patent was filed and he assigned the corresponding rights to Scenera, "I was entitled to $5,000. . . . There was nothing as far as work with respect to the patent that I needed to do in order to earn that bonus."

Moreover, Mona Singh, an inventor and witness for Scenera, confirmed that "whatever bonuses applied to [her] agreement became earned and due at the time the patent was filed." Singh also testified that she had received five or six issuance bonuses after leaving Scenera.

We hold that plaintiff has carried his minimal burden of presenting more than a scintilla of evidence supporting his WHA claim. While defendants cite conflicting evidence (some of which we discuss below), in the context of a directed verdict and JNOV, the trial court must resolve these conflicts in plaintiff's favor. Accordingly, we affirm the Court of Appeals' holding that the trial court properly submitted the question of whether plaintiff was entitled to the issuance bonuses to the jury and properly denied defendants' directed verdict and JNOV motions.

B

Defendants further argue that the Court of Appeals erred in construing the term "calculable" under the WHA to mean capable of being estimated. As a preliminary matter, we address the Court of Appeals' holding that the question of whether a wage is "calculable" under the WHA is one of fact, not law, and that therefore the trial court could properly submit the question to the jury. The Court of Appeals explained that determining whether a wage is calculable "requires a weighing of the evidence and, thus, falls in a jury trial within the exclusive purview of the jury." *Morris*, 229 N.C. App. at 44, 747 S.E.2d at 370 (citations omitted). As we have explained, it is for the trial court "to determine whether the evidence . . . is

sufficient to permit a legitimate inference of the facts essential to recovery; and it is the province of the jury to weigh the evidence and to determine what it proves or fails to prove." *Sneed v. Lions Club of Murphy, N.C., Inc.*, 273 N.C. 98, 101, 159 S.E.2d 770, 772 (1968) (citations omitted). "It is still for the jury if reasonable [minds] may differ as to its truth or if conflicting inferences may reasonably be drawn from" the evidence. *Cutts v. Casey*, 278 N.C. 390, 421, 180 S.E.2d 297, 314 (1971) (citations omitted). Because determining whether a wage is calculable involves a weighing of the evidence, we affirm the Court of Appeals' holding that this issue presents a question of fact.

At trial, plaintiff argued that the value of the patent issuance bonuses for patent applications still pending with the PTO could be calculated using the following formula: 150 outstanding patents x $5,000 for each successfully issued patent x 90% patent issuance success rate = $675,000. The trial court instructed the jury to determine whether it could calculate the issuance bonuses owed, and if so, to compute that amount. The Court of Appeals first noted that neither the WHA nor case law define the term "calculable." The court therefore consulted the *American Heritage College Dictionary*, which defined calculable as " '[t]hat [which] can be calculated or estimated.' " *Morris*, 229 N.C. App. at 45, 747 S.E.2d at 371 (quoting *The American Heritage College Dictionary* 198 (3d ed. 1997) (emphasis added)). The court concluded that plaintiff's proffered formula "was at least one reasonable way to calculate" the

bonuses and therefore held that the trial court did not err in submitting this question to the jury. *Id.* at 45, 747 S.E.2d at 371.

Defendants again argue that "calculable" does not mean capable of being estimated because this interpretation would allow impermissible speculation as to future wages. Defendants cite the rule that "the party seeking damages must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." *Olivetti Corp. v. Ames Bus. Sys., Inc.,* 319 N.C. 534, 547-48, 356 S.E.2d 578, 586 (1987) (citation omitted). Plaintiff's formula, they contend, does not allow for the reasonably certain determination of issuance bonuses associated with pending patent applications.

We disagree. In other contexts in which a party seeks to recover lost profits, that party must show "both the amount and [the] cause of his loss. Absolute certainty, however, is not required, but both the cause and the amount of the loss must be shown with reasonable certainty." *Cary v. Harris,* 178 N.C. 624, 628, 101 S.E. 486, 488 (1919) (quoting *Nance v. W. Union Tel. Co.,* 177 N.C. 314, 317, 98 S.E. 838, 840 (1919)). The evidence indicated that plaintiff had completed all the work required for the patents to issue. An employer must pay "those wages and benefits due *when the employee has actually performed the work required to earn them.*" *Kornegay v. Aspen Asset Grp.,* 204 N.C. App. 213, 229, 693 S.E.2d 723, 735 (2010) (quoting *Narron v. Hardee's Food Sys., Inc.,* 75 N.C. App. 579, 583, 331 S.E.2d 205, 208 (emphasis added), *disc. rev. denied,* 314 N.C. 542, 335 S.E.2d 316 (1985)).

We further note that defendants presented no evidence at trial challenging the adequacy of plaintiff's formula. Because defendants offered no other formula, this Court need only be concerned that the result reached, based on the evidence presented, is reasonable. *See Jenrette Transp. Co.,* 236 N.C. at 539-40, 73 S.E.2d at 485. We therefore affirm the Court of Appeals' holding that determining calculability of wages under the WHA is a question of fact to be submitted to a jury.

II

We next address plaintiff's argument that the Court of Appeals erred in affirming the trial court's decision to refrain from awarding plaintiff liquidated damages on the jury's award of issuance bonuses associated with unissued patents. First, we must determine the appropriate standard of review. Plaintiff contends that de novo review applies, while defendants contend that we should apply a three-tiered standard as used by federal courts addressing claims under the Fair Labor Standards Act ("FLSA").

In *Kornegay v. Aspen Asset Group, LLC*, the Court of Appeals adopted the latter approach.

> [T]he traditional standard of review that applies to a trial court's factual findings—in federal court, the "clearly erroneous" standard and in North Carolina, the "competent evidence" standard—applies to findings of fact made by a trial court in addressing a claim for liquidated damages. In reviewing the trial court's conclusions of law, the courts have held that review is de novo, including on the issue whether the findings of fact support the conclusions of law.

204 N.C. App. at 245, 693 S.E.2d at 745. The trial court's final decision to award or refrain from awarding liquidated damages is then reviewed for abuse of discretion. *Id.* at 244, 693 S.E.2d at 744. We adopt the Court of Appeals' reasoning in *Kornegay* and review the trial court's decision to not award plaintiff liquidated damages for an abuse of discretion.

We hold that the trial court did not abuse its discretion in concluding that plaintiff was not entitled to liquidated damages.

The WHA provides:

> In addition to the amounts awarded pursuant to subsection (a) of this section, the court shall award liquidated damages in an amount equal to the amount found to be due as provided in subsection (a) of this section, provided that if the employer shows to the satisfaction of the court that the act or omission constituting the violation was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this Article, the court may, in its discretion, award no liquidated damages or may award any amount of liquidated damages not exceeding the amount found due as provided in subsection (a) of this section.

N.C.G.S. § 95-25.22(a1)(2015).

Plaintiff argues that defendants committed a per se WHA violation that was unreasonable as a matter of law when they did not notify him that he would not receive the issuance bonuses when his employment ended. The trial court held, however, that defendants had reasonable grounds for believing that their act or omission was not a violation of the WHA. We agree with the trial court. In

considering the evidence, defendants had reason to believe that they did not owe plaintiff issuance bonuses. Therefore, we hold that defendants acted reasonably in not notifying defendant that he would not receive those bonuses.

Plaintiff's own testimony and complaint strongly support the conclusion that defendants acted reasonably. At his deposition, plaintiff stated that he was entitled to receive the issuance bonus "when the patent issued from the U.S. Patent Office." When asked at trial if "Scenera's obligated to pay an issuance bonus only if the patent issues," plaintiff responded, "Under the agreement that I had, yes." Plaintiff also testified that "[t]he issuance bonus was due when the patent issued." Finally, plaintiff's complaint alleged that the issuance bonus became due "when a patent issued."

We thus affirm the Court of Appeals' holding that the trial court properly denied plaintiff's request for liquidated damages on the jury's award of patent issuance bonuses.

### III

We next address whether the Court of Appeals erred by affirming the trial court's decision not to treble the jury's award of REDA damages. The REDA provides that if "the court finds that the employee was injured by a willful violation of [the section prohibiting discriminatory or retaliatory action by an employer], the court shall treble the amount awarded." N.C.G.S. § 95-243(c) (2015). But REDA does not define the term "willful," and we have not addressed the term in this context. The

Court of Appeals adopted the standard used by federal courts in addressing the Fair Labor Standards Act (FLSA), holding that a willful FLSA violation is "one in which the employer 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [the] statute.'" *Morris*, 229 N.C. App. at 51, 747 S.E.2d at 375 (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 100 L. Ed. 2d 115, 123 (1988)).  Again looking to federal law for guidance, the Court of Appeals held that the determination of willfulness is a question of fact, *id.* at 52, 747 S.E.2d at 375 (citing *Formby v. Farmers & Merchs. Bank,* 904 F.2d 627, 632 (11th Cir. 1990) (*per curiam*) (determination of willfulness under Age Discrimination in Employment Act is a question of fact)), and adopted the competent evidence standard used in bench trials, *id.* at 52, 747 S.E.2d at 375 (citing *In re Estate of Archibald,* 183 N.C. App. 274, 276, 644 S.E.2d 264, 266 (2007)).  Finally, the Court of Appeals held that a determination of "willfulness" under REDA is "for the jury to decide, not for the judge." *Id.* at 52, 747 S.E.2d at 375.[1]

We agree with the Court of Appeals' definition of "willfulness," as well as its determination that whether defendants' violation of REDA was willful is one of fact. But, we disagree with its decision that the determination of willfulness is one for the jury.  The statute clearly establishes that damages shall be trebled under REDA if

---

[1] Nonetheless, the court recognized that a party can waive its right to have a jury determine questions of fact and that plaintiff did so here by "explicitly concur[ring] with the business court's suggestions that . . . Scenera's 'willfulness' under REDA was for the court to decide." *Id.* at 52, 747 S.E.2d at 375.

"the *court* finds that the employee was injured by a willful violation." N.C.G.S. § 95-243(c) (emphasis added). Thus, the trial court must make the finding of willfulness, and a reviewing court must uphold the trial court's finding of willfulness if there is competent evidence to support that finding.

The record supports the trial court's finding that defendants did not willfully violate REDA. Plaintiff was the first party to suggest that he and Scenera "part ways" and "negotiate a termination agreement." Plaintiff speculates that defendants' retention of counsel is evidence that defendants attempted to conceal their REDA violations; however, plaintiff cites no specific evidence indicating the existence of a cover-up, and the record shows none. Defendants' retention of counsel may simply demonstrate that they wished to comply with REDA.

We thus hold that proving a willful violation of N.C.G.S. § 95-241 requires a showing of the accused party's knowledge or reckless disregard of whether an action violated the statute and affirm the Court of Appeals' holding that competent evidence supported the trial court's decision to not treble plaintiff's REDA award.

IV

Finally, we address defendants' argument that plaintiff is not entitled to rescission. Defendants argue that plaintiff is not entitled to rescission because monetary damages provide plaintiff with an adequate remedy, and because rescission would return plaintiff to a status quo that never existed. We agree.

Rescission is an equitable contract remedy that differs from its legal counterparts. While legal remedies generally compensate the non-breaching party as if there were no breach, rescission treats both parties as if there were no contract. *Brannock v. Fletcher*, 271 N.C. 65, 73–74, 155 S.E.2d 532, 541 (1967). "Rescission is not merely a termination of contractual obligation. It is abrogation or undoing of it from the beginning." *Id.* at 74, 155 S.E.2d at 542 (citing *Dooley v. Stillson*, 46 R.I. 332, 335, 128 A. 217, 218 (1925)). As with all equitable remedies, rescission "will not lend its aid in any case where the party seeking it has a full and complete remedy at law." *Jefferson Standard Life Ins. Co. v. Guilford County*, 225 N.C. 293, 300, 34 S.E.2d 430, 434 (1945) (citations omitted). A party may pursue rescission only if "there is a material breach of the contract going to the very heart of the instrument." *Wilson v. Wilson*, 261 N.C. 40, 43, 134 S.E.2d 240, 242, 243 (1964).

The Court of Appeals incorrectly applied the test for rescission. The court held that Scenera's failure to pay plaintiff his patent bonuses was prima facie evidence of a material breach, and, because defendants breached the contract materially, plaintiff could pursue rescission. But, rescission cannot be the remedy for every material breach. A party may pursue rescission only when a material breach occurs *and* all legal remedies falls short of compensating the injured party for its loss. *Id.* at 43, 134 S.E.2d at 243, *see Jefferson Standard Life Ins. Co.*, 225 N.C. at 300, 34 S.E.2d at 434.

Here, although defendants materially breached their contract with plaintiff, monetary damages sufficiently compensate plaintiff for his loss. Plaintiff's entire claim is that defendants owe him $5,000 to $10,000 for each patent he created while employed at Scenera. Defendants owed plaintiff no other obligation under the contract, and monetary damages provide plaintiff with a full and complete remedy.

To hold otherwise would seriously undermine the rationale of the hired-to-invent doctrine.[2] As this Court explained in *Speck*, an employer takes a risk when hiring an employee to invent, because the employer has no guarantee of a return on its investment. 311 N.C. at 686, 319 S.E.2d at 143 (in which this Court adopted the hired-to-invent doctrine, holding that if the employee succeeds in inventing, "then the invention belongs to the employer even though the terms of employment contain no express provision dealing with the ownership of whatever inventions may be developed." (quoting *Nat'l Dev. Co. v. Gray*, 316 Mass. 240, 247, 55 N.E.2d 783, 787 (1944)). If an employee is hired to invent but could later rescind that agreement and claim ownership of inventions made during his or her employment, the employee would end up in a far better position, and the employer in a far worse position, than when the parties reached their original bargain. The employer's risk would increase exponentially, thereby discouraging businesses and universities from undertaking

---

[2] The trial court concluded that plaintiff was "hired to invent." However, the Court of Appeals stated that this conclusion by the trial court was "inapposite" to the issue of rescission. *Morris*, 229 N.C. App. at 62, 747 S.E.2d at 381. We assume, without deciding, that plaintiff was hired to invent.

valuable research efforts that could benefit our State and Nation.

For these reasons, the Court of Appeals' holding that plaintiff may pursue rescission is reversed.

V

In conclusion, we affirm the Court of Appeals' holding that the trial court properly submitted the issue of whether plaintiff was entitled to the issuance bonuses to the jury and properly denied defendants' directed verdict and JNOV motions. We likewise affirm the Court of Appeals' holding that determining calculability of wages under the WHA is a question of fact to be submitted to a jury. We also affirm the Court of Appeals' holdings that plaintiff is not entitled to liquidated damages based on the WHA or treble damages based on REDA. Finally, we reverse the Court of Appeals' holding that plaintiff may pursue rescission.

AFFIRMED IN PART; REVERSED IN PART.