Morris v. Scenera Research, LLC, 2016 NCBC 99.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

ROBERT PAUL MORRIS,

            Plaintiff,

      v.

SCENERA RESEARCH, LLC and
RYAN C. FRY,

            Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
09 CVS 19678

)
)
)
)
)
)
)
)
)
)
)
)

**ORDER AND OPINION ON REQUEST FOR ATTORNEYS' FEES**

1.      THIS MATTER is now before the Court on Plaintiff's four motions for attorneys' fees (collectively the "Motions"). After reviewing the record, briefs, and authorities cited, and hearing arguments of counsel, the Court concludes that while there may be a factual basis to apportion prejudgment attorneys' fees, Plaintiff is entitled to recover all such fees, unless Defendants can demonstrate a factual basis for finding that some prejudgment fees can be allocated to tasks that did not directly benefit the litigation of the claims upon which Plaintiff was successful and that were not directed toward developing or presenting a factual record that serves as the common nucleus for all claims. The Court further concludes that there is a clear basis for apportioning attorneys' fees incurred in connection with postjudgment appeals based on a closed factual record, and that Plaintiff should recover attorneys' fees incurred on appeal in defending the portion of the judgment regarding claims on which he prevailed, but not those incurred in attacking the portion of the judgment on which he did not prevail. Finally, the Court concludes that, in order to meet their

burden, Defendants are entitled to review Plaintiff's underlying billing records, redacted as necessary to protect privileges, and that further submissions are required upon which the Court can make its final award of attorneys' fees consistent with the mandate of the North Carolina Court of Appeals.

*Young Moore and Henderson, P.A., by Walter E. Brock, Jr. and Andrew P. Flynt, for Plaintiff.*

*Parker Poe Adams & Bernstein LLP, by Catharine B. Arrowood and Scott E. Bayzle, for Defendants.*

Gale, Chief Judge.

## I. THE MATTER BEFORE THE COURT

2. A complete background of the claims, counterclaims, and defenses in this action is available in the several published opinions issued during the course of this litigation. *See, e.g., Morris v. Scenera Research, LLC*, No. 09-CVS-19678, 2012 NCBC LEXIS 29 (N.C. Super. Ct. May 14, 2012), *aff'd in part and rev'd in part*, 229 N.C. App. 31, 747 S.E.2d 362 (2013), *aff'd in part and rev'd in part*, 368 N.C. 857, 788 S.E.2d 154 (2016); *Morris v. Scenera Research, LLC*, No. 09-CVS-19678, 2012 NCBC LEXIS 1 (N.C. Super. Ct. Jan. 4, 2012). The only remaining matter is Plaintiff's request for an award of attorneys' fees. There are four pending motions requesting recovery of fees incurred through efforts litigating the action through judgment following a jury trial and efforts on appellate proceedings before both the North Carolina Court of Appeals and the North Carolina Supreme Court.

3. First, Plaintiff's Motion for Supplemental Relief, which was filed on March 7, 2012, and supplemented on April 18, 2012, and on May 10, 2012, seeks an

award in the amount of $819,752.41 for fees incurred through April 30, 2012. The Court ruled on this motion in its Judgment entered on May 14, 2012, awarding attorneys' fees in the amount of $450,000. *See Morris*, 2012 NCBC LEXIS 29, at *33. The Court reduced the amount requested because Plaintiff succeeded on some claims but not others. On appeal, the Court of Appeals held that this Court did not make adequate findings in its Judgment to support apportioning attorneys' fees among Plaintiff's successful and unsuccessful claims, and remanded the matter for further consideration.

4. Second, Plaintiff's Motion for Attorneys' Fees Incurred After Entry of Judgment, filed on July 19, 2012, seeks an award in the amount of $29,049.56 for fees incurred between May 1, 2012, and June 30, 2012, prior to the appeals. On September 14, 2012, the Court issued an order explaining that it could not consider this motion while the case was on appeal.

5. Third, Plaintiff's Motion for Attorneys' Fees and Expenses Incurred on Appeal to the North Carolina Court of Appeals, filed in this Court on June 28, 2016, seeks an award of fees in the amount of $133,027.16 in connection with the appeal to the North Carolina Court of Appeals in the period between July 1, 2012, and September 5, 2013. This motion was filed after the Court of Appeals denied without prejudice an earlier motion for costs on September 11, 2013, reserving Plaintiff's right to seek such fees from this Court.

6. Fourth, Plaintiff-Appellee/Cross-Appellant's Motion for Attorneys' Fees Incurred on Appeal seeks an award in the amount of $163,101.83 for fees incurred

between September 6, 2013, and May 19, 2015, related to the proceedings before the Supreme Court. This motion was originally filed with the North Carolina Supreme Court. On June 30, 2016, the Supreme Court remanded the motion to this Court for consideration.

7. Now that the Court's Judgment has been affirmed in all respects except for the issue of attorneys' fees, Plaintiff's Motions are ripe for the Court's consideration upon remand from the North Carolina Court of Appeals.

## II. PROCEDURAL HISTORY

8. The dispute arises out of Plaintiff Robert Paul Morris's prior employment with Defendant Scenera Research, LLC ("Scenera"), where his duties included work that led to the filing of multiple patent applications on which Morris was listed as an inventor. Defendant Ryan C. Fry is Scenera's CEO.

9. Scenera implemented a bonus program pursuant to which employee-inventors were paid a bonus when a patent application for which they were an inventor was filed, and an additional bonus when a patent based on that application was issued. Defendants contended, and Plaintiff denied, that Scenera terminated that bonus program effective year-end 2007. Plaintiff's employment ended in July 2009, at which time he contended that Scenera owed him unpaid bonuses totaling $210,000. Prior to the litigation, Scenera, while denying liability, tendered to Plaintiff the $210,000 for contested accrued unpaid bonuses, but conditioned that tender on Plaintiff's acknowledging that Scenera owned all the disputed patents and patent applications. Plaintiff did not accept the tender.

10. Plaintiff contended, and Defendants denied, that Plaintiff was terminated in retaliation for asserting his right to receive bonuses for the period after January 1, 2008. Thereafter, the parties' dispute extended to whether the bonus program, even if deemed to remain in place as to Plaintiff, required that an employee be employed at the time a patent issued to be entitled to receive a patent-issuance bonus. As the dispute continued, Plaintiff contended that, because Scenera refused to pay the bonus wages, he was entitled both to refuse to assign invention rights to Scenera for inventions made in the course of his employment and to rescind prior assignments.

11. Scenera was the first to initiate litigation. On September 17, 2009, it initiated a federal court action asking for, among other things, a declaratory judgment that because the inventions arose during the course of and within the scope of Plaintiff's employment, Scenera owned the various patents and patent applications. *See Scenera Research, LLC v. Morris*, Nos. 5:09-CV-412-FL, 5:09-CV-439-FL, 2011 U.S. Dist. LEXIS 14601, at *1–2 (E.D.N.C. Feb. 14, 2011).

12. After Scenera filed the federal court action, Plaintiff filed this state court action on September 25, 2009, which Scenera removed to federal court. *See id.* Plaintiff presented a claim for bonus compensation pursuant to the North Carolina Wage and Hour Act ("WHA"), and a claim under the North Carolina Retaliatory Employment Discrimination Act ("REDA"). The REDA claim asserted that Plaintiff was terminated in retaliation for pursuing his wage claim. Plaintiff also alleged claims of fraudulent inducement, unjust enrichment, and breach of

contract, based on essentially the same facts, contending that Plaintiff had earlier agreed to withdraw his demand for bonus compensation upon Scenera's assertion that an alternative favorable compensation agreement would be offered. Scenera defended on the basis that the bonus program had been effectively terminated and that Plaintiff was not terminated but instead had voluntarily resigned.

13. Discovery proceeded in the federal actions. After expiration of the discovery period, on February 14, 2011, the United States District Court for the Eastern District of North Carolina dismissed Scenera's initial action for lack of subject matter jurisdiction, and Plaintiff's action was remanded to the Wake County Superior Court. *Id.* at *19. Scenera then recast the claims presented in its federal action as amended counterclaims in Plaintiff's remanded action, seeking a declaration that Scenera owns all intellectual property resulting from Plaintiff's employment, that Scenera owed Plaintiff no bonuses, and that Plaintiff was liable to Scenera for damages because of his failure to fulfill his fiduciary duties to support Scenera's patent prosecutions. Defendants filed a notice of designation on March 31, 2011. The case was designated a mandatory complex business case on April 1, 2011, and assigned to the undersigned on April 6, 2011.

14. There was substantial motion practice in this Court before trial. The Court was first required to resolve discovery disputes that had been presented in federal court but were not ruled on before the case was remanded. *See Morris v. Scenera Research, LLC*, No. 09-CVS-19678, 2011 NCBC LEXIS 34 (N.C. Super. Ct. Aug. 26, 2011). Later, the Court narrowed the issues for trial by partially granting

summary judgment in favor of Defendants and dismissing Plaintiff's claims of fraudulent inducement and unjust enrichment, primarily on the basis that those claims were duplicative of his other claims. *Morris*, 2012 NCBC LEXIS 1, at \*35. The Court also determined that Scenera would succeed on its claim that it was the exclusive owner of inventions made during Plaintiff's employment pursuant to the hired-to-invent doctrine, unless Plaintiff could present evidence at trial that he and Scenera had entered into an employment agreement that made the hired-to-invent doctrine inapplicable. *Id.* at \*12–13, \*25–26. Before trial, Scenera dismissed its claim that Plaintiff had breached his fiduciary duty, but maintained its damages counterclaim.

15. The case was called for jury trial on January 30, 2012. At the conclusion of the trial, the Court submitted ten issues reflecting the various claims and defenses to the jury. Before submitting those issues to the jury, at the close of the evidence, the Court granted Scenera's motion for a directed verdict on the issue of patent ownership, finding that Plaintiff had failed to present evidence of any express agreement that would take his employment outside of the hired-to-invent doctrine, and that as a result, that doctrine vested exclusive ownership in Scenera for inventions made in the course of Plaintiff's employment.

16. The Court denied Scenera's further motion for a directed verdict on Plaintiff's WHA and REDA claims. Throughout trial, Scenera maintained its defenses against Plaintiff's bonus claims, contending that: (1) Plaintiff had consented to terminate the bonus program effective December 31, 2007, (2)

alternatively, Scenera had terminated the bonus program effective December 31, 2007, and (3) even if the bonus program remained in place, Plaintiff had not earned the right to any bonus for a subsequently issued patent, because the bonus program required him to be employed when the patent issued. Scenera further contended that potential bonuses for patents not yet issued were not calculable and therefore were not recoverable as wages under the controlling definitions in the WHA. Finally, Scenera claimed that any recovery that Plaintiff might obtain should be discounted because of his failure to mitigate damages by seeking alternative employment.

17. Plaintiff's evidence was that, as of the date of trial, he was owed $210,000 in unpaid bonuses, with $145,000 of that amount having accrued prior to January 1, 2008. Plaintiff further asserted that his right to patent-issuance bonuses had vested at the time the patent application was filed, that patent-issuance bonuses were not conditioned on continued employment and had been paid to other employees after their employment terminated, and that future issuance bonuses could be calculated based on a formula derived from Scenera's historical patent-issuance success. Plaintiff offered a formula that multiplies the number of patent-pending applications for which he was an inventor—150—times Scenera's historical patent-issuance success rate—90%—times $5,000, yielding a total of $675,000 (150 pending applications x 90% x $5,000).

18. The jury found for Plaintiff on all ten issues presented to it. On the WHA claims, the jury found that Plaintiff was entitled to $210,000 for bonuses that

accrued while he was employed at Scenera, and $675,000 for future patents that might issue based on the 150 pending applications for which Plaintiff was listed as an inventor, accepting the formula that he presented. The jury further found that Plaintiff had not resigned, but that Scenera had terminated him, and that such termination was retaliatory. On the REDA claim, the jury awarded Plaintiff $540,000 because of the retaliatory discharge but found that this amount should be reduced by $150,000 for a failure to mitigate, yielding a net REDA award of $380,000. The jury found against Defendants on their counterclaim.

19. In sum, at the conclusion of trial, Plaintiff had prevailed on all bonus-related claims, including the retaliatory-discharge claim, and Scenera had prevailed on the issue of patent ownership, which effectively precluded Plaintiff from successfully asserting that he had the right to refuse to assign or to rescind prior assignments for inventions made in the course of his employment. However, after trial, Plaintiff continued to argue that he had an election of remedies and could elect between payment of unpaid bonuses or his ownership rights to inventions by either not assigning those patents that had yet to be assigned to Scenera, or by rescinding his prior assignments.

20. Based on the jury verdict, Plaintiff requested supplemental relief under both the WHA and the REDA. He requested interest and liquidated penalties on his WHA claim pursuant to N.C. Gen. Stat. § 95-25.22(a1) (2015), which provides that such penalties can be avoided upon an employer's demonstration that it acted in good faith. The Court awarded Plaintiff interest and

a liquidated penalty on the $210,000 WHA award for bonuses earned during his employment, but not on the $675,000 WHA award for the future bonuses, upon finding that Scenera acted in good faith when contesting future patent-issuance bonuses. Plaintiff requested that his net REDA recovery be trebled because Defendants had acted willfully. The Court denied the request for treble damages upon finding that the termination was not willful.

21. Plaintiff also requested attorneys' fees pursuant to sections 95-25.22(d) and 95-243(c), seeking a total fee award of $819,752.41. The Court concluded, in its discretion, that the total fees requested arose both from claims on which Plaintiff had succeeded and those on which he had not, and that any award should be reduced accordingly. Before making its final determination, the Court reviewed the governing statutes and opinions of the North Carolina Court of Appeals, including *Whiteside Estates, Inc. v. Highlands Cove, LLC*, 146 N.C. App. 449, 553 S.E.2d 431 (2001) and *Hamilton v. Memorex Telex Corp.*, 118 N.C. App. 1, 454 S.E.2d 278 (1995). Based on its review, the Court concluded that it had discretion under the controlling law to determine first, whether to award attorneys' fees, and assuming it decided to do so, that it then had discretion to determine whether to allocate fees incurred among successful and unsuccessful claims.

22. The Court entered judgment on May 14, 2012, awarding Plaintiff the right to recover the monetary damages described above, declaring Scenera the owner of all the intellectual property in dispute, and ordering Plaintiff to complete assignments of all relevant patent inventions to Scenera, effectively rejecting

Plaintiff's claim that he was entitled to elect between accepting payment of monies awarded to him or rescinding prior patent applications that he had executed and not executing other applications. Without making specific findings as to what efforts had been directed to what claims, the Court, in its discretion, awarded Plaintiff $450,000 in attorneys' fees. The Judgment became final when the Court denied Defendants' motion for judgment notwithstanding the verdict on June 27, 2012.

23. Defendants appealed on July 11, 2012. On July 19, 2012, Plaintiff filed his notice of cross-appeal with the North Carolina Court of Appeals and filed with this Court a motion seeking attorneys' fees for the period between May 1, 2012, and July 11, 2012. On August 20, 2013, the North Carolina Court of Appeals issued a fifty-five page opinion, reciting its belief that several issues presented on appeal were matters of first impression in North Carolina. *Morris*, 229 N.C. App. at 44, 747 S.E.2d at 370.

24. Defendants first challenged Plaintiff's recovery under both the WHA and the REDA. Defendants eventually abandoned their appeal of the REDA claim but continued their challenge to the award of liquidated damages for the $210,000 in bonuses, which the jury determined had accrued before trial, and the award of $675,000 for future issuance bonuses for patents that had not been issued at the time Plaintiff's employment had terminated. The Court of Appeals found no error. *Id.* at 40, 747 S.E.2d at 368.

25.     Through his cross-appeal, Plaintiff presented five assignments of error. The first assignment challenged the denial of liquidated damages under the WHA on the jury award of $675,000 for bonuses for future patents. *Id.* at 48, 747 S.E.2d at 373. The second assignment challenged the denial of treble damages for the REDA award. *Id.* The Court of Appeals found that the first two assignments were without merit. *Id.* at 50, 56, 747 S.E.2d at 374, 377. Plaintiff's third assignment of error challenged the Court's reduction of attorneys' fees based on Plaintiff succeeding on some claims but not on others. *Id.* at 48, 747 S.E.2d at 373. The Court of Appeals adopted some of Plaintiff's contentions, but remanded the issue of attorneys' fees to this Court for further consideration in light of the Court of Appeals' opinion. *Id.* at 59, 747 S.E.2d at 379. Plaintiff's fourth and fifth assignments of error challenged this Court's Judgment that required him to assign all invention rights to Scenera. *Id.* at 48, 747 S.E.2d at 373. Plaintiff maintained his argument that he could elect between remedies of accepting payment for monies owed to him or obtaining rights to pursue patent applications on inventions made during the course of his employment. *Id.* at 59, 747 S.E.2d at 379. The Court of Appeals held that Plaintiff should have an election of remedies but did not otherwise discuss how the hired-to-invent doctrine should be applied in this case. *Id.* at 62, 747 S.E.2d at 381.

26.     Defendants then sought discretionary review of the Court of Appeals' opinion by the North Carolina Supreme Court on three issues: (1) whether this Court erred by denying Defendants' motions for a directed verdict and JNOV, (2)

whether Plaintiff must be foreclosed from any election of remedies because he has no ownership rights in his inventions based on the hired-to-invent doctrine, and (3) whether Plaintiff could recover issuance bonuses on patents that had not issued at the time his employment terminated. *Morris*, 368 N.C. at 861–62, 867, 788 S.E.2d at 157–58, 161. After the Supreme Court accepted the case for discretionary review, Plaintiff requested that the Supreme Court additionally review the Court of Appeals' holding that this Court had properly rejected liquidated damages on a portion of Plaintiff's WHA recovery and his claim for trebling his net REDA recovery. *Id.* at 864–65, 788 S.E.2d at 159–160.

27. Ultimately, the North Carolina Supreme Court considered five issues. Defendants were unsuccessful on their challenge to this Court's denial of their motions for a directed verdict and JNOV on Plaintiff's WHA and REDA claims. *Id.* at 862, 788 S.E.2d at 158. Although the Supreme Court did not squarely address application of the hired-to-invent doctrine to the facts of this case, Defendants succeeded on the issues related to Scenera's ownership of the disputed intellectual property, and the Supreme Court rejected Plaintiff's assertion that he had the right to elect between remedies. *Id.* at 868, 788 S.E.2d at 162. Plaintiff successfully defended his right to recover issuance bonuses for patents that had not issued at the time he was terminated. *Id.* at 864, 788 S.E.2d at 159. Plaintiff was unsuccessful on his challenge to this Court's refusal to award liquidated damages under the WHA or treble damages under the REDA. *Id.* at 865, 867, 788 S.E.2d at 160–61.

28.    Ultimately, every aspect of this Court's Judgment was affirmed except for the award of attorneys' fees, which was reviewed by the Court of Appeals but not by the Supreme Court.  The Court is now required, in conformity with the Court of Appeals' mandate, to revisit the award of attorneys' fees incurred prior to judgment, and further, to consider, for the first time, Plaintiff's additional claims for attorneys' fees incurred during the appellate proceedings.

## III.    ANALYSIS

### A. The Applicable Legal Standard

29.    Plaintiff succeeded on statutory claims that allow for the recovery of attorneys' fees.  The statute that governs actions under the WHA provides that "[t]he court, in any action brought under this Article may, in addition to any judgment awarded plaintiff, order costs and fees of the action and reasonable attorneys' fees to be paid by the defendant."  N.C. Gen. Stat. § 95-25.22(d).  The statute does not require a showing of bad faith.  *Fulk v. Piedmont Music Ctr.*, 138 N.C. App. 425, 435, 531 S.E.2d 476, 482 (2000).  The statute that governs actions under the REDA similarly provides that "[t]he court may award to the plaintiff and assess against the defendant the reasonable costs and expenses, including attorneys' fees, of the plaintiff in bringing an action pursuant to this section."  N.C. Gen. Stat. § 95-243(c).  Whereas an award of treble damages under the REDA requires a finding that the employer's act was willful, no such finding is required for the award of attorneys' fees.  *Id.*

30.    When entering judgment, this Court determined that it was appropriate to grant Plaintiff only a portion of the requested attorneys' fees because Plaintiff had

prevailed on some claims but not on others. First, the Court read the terms of the governing statutes to make the award of fees discretionary, because the statutes stated that the Court "may" award rather than "shall" award. *Id.* §§ 95-25.22(d),-243(c). Second, the Court consulted opinions of the Court of Appeals that address cases where a plaintiff presented a mixture of claims that warranted attorneys' fees and claims that did not, as well as cases where a plaintiff was only partially successful on claims presented. *See Morris*, 2012 NCBC LEXIS 29, at *30–31 (first citing *Whiteside Estates,* 146 N.C. App. at 467–68, 553 S.E.2d at 443; then citing *Hamilton*, 118 N.C. App. at 16–17, 454 S.E.2d at 286). The Court read this precedent to provide that, while the Court is not required to apportion fees among successful and unsuccessful claims, it has the discretion to do so.

31.     The Court of Appeals apparently read this precedent more narrowly and in a manner that more restrictively constrains the Court's exercise of discretion. While the Court of Appeals determined, in part, that this Court had not made adequate findings of fact to demonstrate the basis for its award, the Court of Appeals further adopted Plaintiff's contention that the Court has no discretion to allocate fees among claims absent express findings that the unsuccessful claims did not arise from a common nucleus of operative fact upon which the successful claims were based. Specifically, the Court of Appeals stated as follows:

> On appeal, Morris argues that the business court erred by allocating among legal claims—and thereby reducing his award of attorneys' fees—because (1) claims that arise from a common nucleus of operative facts *should not be allocated*; (2) the business court "failed to make any findings of fact or offer any conclusions of law on whether Morris's claims and Defendants' counterclaims [arose] from a common nucleus of

operative fact[]"; and (3) the parties' claims did, in fact, arise from a common nucleus of operative fact. *We agree with Morris's first two arguments* and refrain from addressing the third.

229 N.C. App. at 56, 747 S.E.2d at 377–78 (alterations in original) (emphasis added) (quoting Brief for Plaintiff/Cross-Appellant at 22–23, *Morris*, 229 N.C. App. 31, 747 S.E.2d 362 (No. COA12-1481)).

32.     When focusing on the question whether all claims shared a common nucleus of operative fact, the Court of Appeals relied on and quoted the following language from the opinion of the United States Supreme Court in *Hensley v. Eckerhart*:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney[s]' fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

461 U.S. 424, 440 (1983).

33.     This Court was aware of *Hensley* when it entered its Judgment, and read the holding in *Hensley* to reserve discretion to the trial court to assess the reasonable relationship between the amount of fees requested and the final results that Plaintiff achieved. Likewise, earlier opinions of our Court of Appeals expressly referred to the trial court's discretion. *See, e.g., Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 595, 525 S.E.2d 481, 487 (2000) (stating that the determination of

whether claims are inextricably interwoven "is left largely to the discretion of the trial courts").

34. The Court now reads the controlling mandate of the Court of Appeals in this matter to be less tolerant of the notion that the Court can reduce the fee award based on its discretionary balancing of the reasonableness of the amount of fees requested and the success that Plaintiff achieved. Rather the Court of Appeals' mandate now demands that this Court must make specific fact findings distinguishing between efforts on successful claims and unsuccessful claims if it wishes to reduce Plaintiff's prejudgment attorneys' fees award. More specifically, the Court of Appeals appears to hold that Plaintiff must be awarded his prejudgment fees unless the Court can find as a fact that efforts on which the fee request is based were not incurred in developing a common nucleus of operative fact upon which all Plaintiff's claims were based.

### B. The Process for Measuring "a Common Nucleus of Operative Fact"

35. There is little North Carolina appellate guidance on what constitutes a common nucleus of operative fact. The Court has not found a comprehensive definition of the term. Cases have held that claims may arise from a common nucleus of operative fact even though they have different and distinct claim elements. *See Philips v. Pitt Cty. Mem'l Hosp., Inc.*, ___ N.C. App. ___, 775 S.E.2d 882, 884–85 (affirming the trial court's finding that the punitive damages claim arose from a "common legal and factual nucleus" even though it "did not share [certain elements] with the underlying claims"), *disc. review denied*, 368 N.C. 434, 778 S.E.2d 84 (2015).

Cases also suggest that a common nucleus of operative fact includes something more than just a shared potential relevance, and instead exists when the claims are based on facts that are "inextricably interwoven." *Okwara*, 136 N.C. App. at 596, 525 S.E.2d at 487 (2000); *see also, Hensley*, 461 U.S. at 436 (explaining that just because claims are "interrelated" does not mean that they are inextricably interwoven).

36. Claims are inextricably interwoven when they "are so similar" that "time spent litigating the [successful] claim *directly benefitted*" the litigation of the other claim, *Hamilton*, 118 N.C. App. at 17, 454 S.E.2d at 286 (emphasis added), or when the "lawsuit cannot be viewed as a series of discrete claims" because "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," *Hensley*, 461 U.S. at 435.

37. The Court discerns that there is both a policy issue and a practical issue at play in these decisions. As a matter of policy, a successful plaintiff should not suffer a reduced fee award based solely on some "arbitrary classification of attorney activity." *Whiteside Estates, Inc.*, 146 N.C. App. at 467, 553 S.E.2d at 443 (quoting *Coastal Prod. Credit Ass'n v. Goodson Farms, Inc.*, 70 N.C. App. 221, 228, 319 S.E.2d 650, 656 (1984)). As a practical matter, a court should not reduce or apportion fees unless there is a demonstrable basis for separating time spent on successful claims from time spent on unsuccessful claims. *Philips*, 775 S.E.2d at 884–85 (affirming the trial court's finding that claims arose from a common nucleus where "apportionment of legal fees between the claims was impractical").

38. The Court concludes that it should assess whether attorneys' fees were incurred in connection with a common nucleus of operative fact by inquiring whether: (1) the efforts resulting in such fees directly benefited the claims upon which Plaintiff succeeded, and (2) the efforts were inextricably interwoven with claims on which Plaintiff did not succeed.

## C. The Final Award of Attorneys' Fees Requires a Further Record Pursuant to Guidelines Provided by this Order and Opinion.

39. Plaintiff argues that all efforts underlying his fee requests directly benefited and were inextricably interwoven with all claims, because no claims or counterclaims would have arisen if Scenera had paid Plaintiff the bonuses that he was entitled to receive. He contends that if such payment had been made, the patent ownership dispute would not have been litigated. A corollary argument must be that Plaintiff had the right to assert some ownership claim in the inventions because he was not paid the wages that he was entitled to receive. The Court believes this argument is too simplistic.

40. Defendants argue that Plaintiff could have litigated his contract claims without asserting any claim of ownership in the inventions or without refusing to cooperate in Scenera's patent prosecution. But because Defendants were forced to defend—and succeeded in defending—Scenera's ownership of the patents, Plaintiff's attorneys' fee award must be reduced to reflect that he made the litigation unnecessarily expensive. That assertion is also too simplistic, particularly in light of the Court of Appeals' mandate.

41. There is no easily discerned demarcation line separating the part of the factual record that relates only to the wage and retaliation claims from the part that relates to the dispute regarding invention ownership. Each of those claims depend upon a factual record regarding the nature of Plaintiff's employment duties and the terms of any employment agreement, including not only agreements as to bonus compensation, but also any understanding between the parties as to whether Plaintiff would have rights in inventions, notwithstanding the hired-to-invent doctrine. However, Plaintiff's right to wages was based on an employment contract, and it was unnecessary to pursue any ownership rights in inventions to recover those wages. Thus, efforts such as research, briefing, and argument separately and solely dedicated to the ownership claims were unnecessary and therefore were not inextricably interwoven with Plaintiff's wage and retaliation claims.

42. The Court entered judgment awarding attorneys' fees of only $450,000 of the $819,752.41 requested. The Court reduced the fee award based on its determination that the litigation had been complicated and compounded by Plaintiff's coupling his wage and retaliation claims with a right to withhold patent assignments and challenging assignments that he had previously made, which impacted Scenera's ability to prosecute patent applications. The Court made this reduction in the exercise of its discretion and did not endeavor to make specific findings regarding what attorney activity directly benefited one claim but not another, or whether such activity was inextricably interwoven with all claims.

43. Having been directed to make more-specific findings, the Court now concludes that the analysis, findings, and basis for allocating attorneys' fees among successful and unsuccessful claims may be different for attorneys' fees incurred prior to judgment and those incurred after judgment. While efforts to develop a prejudgment factual record may be more difficult to assign to distinct claims, that is not the case once the factual record was closed and the jury's finding complete as reflected in the Judgment entered prior to appeal. Thereafter, the legal arguments arising from that factual-record and judgment were separate and distinct, at least in substantial part, although there may have necessarily been some overlap in areas such as brief and oral argument preparation.

44. As to efforts undertaken prior to the entry of judgment, the Court, at this time, finds no reasoned basis for delineating between the discovery and factual record development that would be relevant only to the contract claims and that which would be relevant only to the patent-ownership claims. The facts underlying those claims are clearly interrelated, and possibly, but not necessarily, inextricably interwoven. As the Court construes the Court of Appeals' mandate to be that Plaintiff should recover all his prejudgment attorneys' fees, unless there is a factual basis to conclude that some portion of those fees arise from efforts that were not directed toward developing or presenting a factual record relevant for all claims, there is effectively a presumption in Plaintiff's favor. To defeat Plaintiff's claims to those fees, Defendants must assume the burden of demonstrating a factual basis not to award certain fees consistent with the Court of Appeals' mandate. The Court does not

believe that the same presumption and burden should apply to attorneys' fees incurred after entry of judgment.

## IV.  CONCLUSION AND DIRECTIVE

45.  Based on the authorities and analysis discussed above, the Court finds, concludes, and directs as follows:

1. Plaintiff succeeded on his claims of unpaid wages and retaliatory discharge, and is therefore statutorily entitled to recover some attorneys' fees. Such fees should not be reduced on the grounds that Plaintiff did not succeed on other claims, as long as the tasks for which fees incurred to prosecute his unsuccessful claims or to defend against Defendants' counterclaims directly benefited the wage and retaliatory-discharge claims and were related to developing or presenting facts that were inextricably interwoven with all claims.

2. The Court has previously held, and now repeats and incorporates its holding, that efforts by Plaintiff's attorneys were reasonable and computed at reasonable rates typically charged by comparably experienced North Carolina counsel on comparable claims.

3. Plaintiff was not required to assert any ownership right in inventions made during his employment in order to succeed on his wage and retaliatory-discharge claims, and more specifically, it was not necessary to such success that he refuse to assign or contest his prior assignments of inventions made during his employment.

4. Even if the facts upon which Plaintiff's wage claims and retaliatory-discharge claims were based are inextricably interwoven with Defendants counterclaims, the legal issues regarding such claims are separate and distinct.

5. Plaintiff prevailed on his wage and retaliatory-discharge claims, but Defendants prevailed on their counterclaim that Plaintiff was hired to invent and therefore had no ownership rights in inventions made during his employment.

6. Plaintiff is entitled to recover all attorneys' fees incurred before judgment unless there is a factual basis to conclude that any portion of those fees did not directly benefit Plaintiff's wage and retaliatory-discharge claims and were not directed toward developing and presenting a factual record that was inextricably interwoven with other claims and counterclaims.

7. If there is a factual basis to so determine, Plaintiff should not be awarded attorneys' fees incurred prior to judgment in connection with litigating the unsuccessful claims or defending against Defendants' counterclaims.

8. Defendants must assume the burden of demonstrating a factual basis on which the Court may find that efforts for which prejudgment fees are requested did not directly benefit Plaintiff's wage and retaliatory-discharge claims and were not directed toward developing and presenting a factual record that was inextricably interwoven with other claims and counterclaims.

9. Plaintiff was unsuccessful on his claims for fraudulent inducement, unjust enrichment and breach of contract. However, no discount from requested fees should be made based on these unsuccessful claims, because such claims were duplicative of and inextricably interwoven with Plaintiff's wage and retaliatory-discharge claims.

10. The factual record was closed upon entry of judgment.

11. The various claims and counterclaims were no longer inextricably interwoven following the jury verdict and entry of judgment, and the wage and retaliatory-discharge claims on which Plaintiff succeeded were not directly benefited by efforts on appeal challenging this Court's rulings on the hired-to-invent doctrine, granting a directed verdict in Defendants' favor, or directing that Plaintiff assign inventions to Scenera.

12. Plaintiff was required on appeal to defend Defendants' attack on his monetary recoveries, and such efforts directly benefited the claims on which Plaintiff prevailed.

13. Plaintiff should recover attorneys' fees incurred on appeal that directly benefited his ability to recover amounts awarded to him in the Court's Judgment.

14. Plaintiff should not recover attorneys' fees incurred on appeal in an effort to reverse rulings adverse to him, regardless of whether Plaintiff would have independently elected to pursue any appeal or discretionary review,

and whether such efforts were made only after Defendants had first appealed or sought discretionary review.

15. Defendants should be allowed to review the nonprivileged records, including specific time entries and billing records, upon which Plaintiff asserts his right to recover attorneys' fees.

16. After making any redactions necessary to preserve privileges, Plaintiff shall produce to Defendants' counsel those records on which the claim of attorneys' fees is made within twenty days of the date of this Order and Opinion.

17. Within twenty days after their receipt of such records, Defendants shall submit their position as to which attorneys' fees incurred prior to judgment they contend should be allocated to claims or counterclaims on which Defendants' prevailed, and document the evidentiary basis on which they contend such an allocation can be made.

18. Plaintiff shall have ten business days to submit an opposition to Defendants' statement of position as to prejudgment fees that should not be awarded.

19. Within twenty days after Defendants' receipt of Plaintiff's records as directed above, Plaintiff and Defendants shall each submit their position on how attorneys' fees incurred after judgment and during the appellate process should be allocated among claims, consistent with this Order and Opinion.

20. The Court will thereafter issue its final award of attorneys' fees.


IT IS SO ORDERED, this the 19th day of December, 2016.


/s/ James L. Gale

James L. Gale
Chief Business Court Judge